JACOB D. BROZA,

*vs.*

ALUMINUM CLEANER CORPORATION, a corporation existing under the laws of the State of Delaware.

*New Castle, March 3, 1932.*

*Charles F. Curley,* for complainant.

*Ayres J. Stockly,* of the firm of Hastings, Stockly & Duffy, for defendant.

THE CHANCELLOR: The contract contemplates the manufacture and sale by the defendant of the articles covered by the patent applications and the use by the defendant of the registered trademarks. The complainant, who had discovered the manufacturing processes and made application for the trademarks, was, under the terms of the contract, to be employed by the defendant as its factory manager at a stipulated salary and in addition was to receive certain stipulated royalties.

The term of the contract with which this suit is particularly concerned is as follows: ·

"7. It is agreed by the Company that if at any time the Company, its successors or assigns, shall decide to discontinue or abandon the manufacture of 'Cracker-Jack' Aluminum Cleaner, then in that event Broza shall become the absolute owner of all formulas, trade-marks, patent applications or existing patents at that time, without remuneration. Should the above condition arise, Broza shall have the privilege and right of purchasing at cost all machinery, equipment, raw materials, finished merchandise and any stock on hand so as to be able to continue the manufacturing of said article."

The complainant contends that the defendant has ceased to manufacture any Cracker-Jack Aluminum Cleaner since December 1, 1930, and the defendant admits that it has not manufactured any such cleaner since some time prior to that date. The complainant argues therefore that the defendant has decided to discontinue the manufacture of the article and that as a consequence he is entitled, under the terms of the contract, to a decree that he is the absolute owner of all the patents, etc., and that the defendant should make proper assignment thereof to him.

The reason which the defendant assigns for not manufacturing any more of the Cracker-Jack aluminum cleaner is that it had an ample quantity on hand to meet the demand therefor and hence further manufacture was inadvisable and useless.

At this point it becomes necessary to inquire—was the defendant bound to continue the manufacture when the demand for the product was at all times able to be satisfied from the stock on hand? I think not. The only purpose of manufacturing was to supply the demands of customers. No reasonable supposition to the contrary could be assumed. Furthermore, it is to be observed, that the forfeiture was not conditioned upon an interruption of manufacture. It was conditioned on the defendant's *decision* "to discontinue or abandon the manufacture." Stopping the manufacture in order not to build up a highly over-stocked condition, cannot, standing alone, constitute sufficient evidence of a decision to discontinue or abandon the manufacture.

We must, therefore, look further for evidence of a decision by the defendant to discontinue or abandon the manufacture of "Cracker-Jack" aluminum cleaner, before the complainant's right to a decree can be sustained.

The further facts bearing upon the question are as follows. The defendant became hopelessly involved in debt. In April, 1930, its plant was shut down. Shortly thereafter its machinery and all stock on hand were seized and sold by its landlord for rent in arrear amounting to three thousand dollars. It owes the complainant sixteen hundred dollars and its total debts amount to about five thousand dollars. Prior to April, 1930, it endeavored to arrange with its creditors a plan for a continuance of its business and failed to succeed in the attempt. Its credit was such that it was unable to secure raw materials with which to continue manufacture. It now has no money in its treasury and no assets of any sort other than the patent applications and trademarks described in the statement of facts. In January, 1931, its charter was proclaimed by the Governor as

having become void for non-payment of franchise taxes. *Section* 74 of the *Franchise Tax Law* (*Revised Code* 1915, § 111, as amended by *Act Gen. Assem.* April 1, 1929 [36 *Del. Laws, c.* 6, § 10]) declares void the charter of any corporation which neglects or fails to pay the franchise tax for two consecutive years. The taxes are assessed by the State Treasurer as due on April 1 of each year, and in the January following the Governor proclaims avoidance of the charters of such corporations as are in arrears in the payment of franchise tax for the period named by the statute. So that in the case of this corporation, its charter became void some time before January, 1931—as early, if we accept April 1st of each year as the dead line, as April 1, 1930.

This showing of facts, the complainant contends and the defendant denies, demonstrates that the defendant has decided to discontinue, if not to abandon, the manufacture of "Cracker-Jack" aluminum cleaner, whereby the complainant is placed in position to assert his rights under paragraph seven of the contract. The defendant's president testified that the defendant, instead of having decided to discontinue the manufacture, intends on the contrary to resume the manufacture in case the market requirements make it necessary. He frankly states, however, that in no event would the defendant resume unless it succeeds in securing additional capital, a condition which nothing in the evidence shows to be possible. Indeed no efforts have been made to keep the defendant's operation afloat since the unsuccessful attempt in the early part of 1930 when it was sought to make some satisfactory arrangements with its creditors. Certain it is that the defendant is at present unable to continue with the manufacture of "Cracker-Jack" aluminum cleaner, however great might be the potential demand therefor. Its hopelessly insolvent condition makes that fact clear.

It seems to me that under the above state of facts, it cannot be concluded that the defendant intends to continue

with the manufacture. Its condition, whatever its wish might be, has forced it to a decision not to manufacture. Though its purpose and desire may be to continue with the manufacture, yet if its circumstances are such as to force it into a condition of complete cessation, there is reason in saying that it has decided against its will to discontinue. I take it that a mere mental attitude of favor towards continuance will not negative the idea of a decision to discontinue when the imperative necessities of an incapacitated condition force a discontinuance in fact. The particular clause of the contract with which the case is concerned when read in the light of the contract's provisions as to salary and royalties payable to the complainant, cannot in reason mean that the question of decision to continue or not shall be left to turn on the mere mental attitude of the corporation's responsible spokesmen. The contract contemplates a continuance of operations, and if a continuance of operations is impossible by reason of the company's financial inability to carry them on, I think that a decision, though an unwilling one, has been made by the company to discontinue them, within the meaning of the contract. Lack of resources with which to carry on operations cannot exonerate the company from the consequences of a decision to discontinue because of such lack. It simply supplies an explanation or reason. It will not do to say that the company, nevertheless, so to speak, continues to entertain a mental state favorable to continuance.

But, even if the purpose on the part of the defendant can still be said to exist to continue with the manufacture, it has no legal power to do so. Its charter has become void. It now has power to conduct only such business as is incidental to winding up its affairs. *Section* 40, *General Corporation Law* (*Revised Code* 1915, § 1954, as amended by *Act Gen. Assem. April* 2, 1925 [34 *Del. Laws, c.* 112, § 9]) ; *McBride, et al., v. Murphy, et al.,* 14 *Del. Ch.* 242, 124 *A.* 798. How can it, then, be said that the defendant now entertains a purpose to continue with the manufacture of the

article in question, when it has no legal power to carry out such purpose?

The activities of the defendant in connection with the marketing of the goods which it had on hand and which were seized for rent and are now the property of the landlord, I shall not pause to discuss as of significance; for such activities cannot, the charter of the defendant being void, be attributable to anything other than a purpose to wind up its affairs.

I conclude that the condition has arisen which entitles the complainant to become "the absolute owner of all formulas, trademarks, patent applications or existing patents," as provided in paragraph seven of the contract.

What are the things to which he is entitled as owner? The complainant contends that he is entitled to everything in the way of a formula, trademark, etc., which the defendant owns. He bases his contention on the broad general language of the phrase in the paragraph of the contract just quoted. I cannot concur in this view. The paragraph deals with "Cracker-Jack" aluminum cleaner. The last sentence of the paragraph shows that it was "said article" which the parties had in mind. I conclude then that only those formulas, etc., which are connected with the "Cracker-Jack" aluminum cleaner should be decreed to the complainant.

It was the manifest purpose of the paragraph to secure to the complainant an enjoyment of the right to manufacture and sell that article, in case the defendant discontinued. Suppose the defendant owned a patent for a window shade, or what not—could it reasonably be contended that the complainant would be entitled to it? Such a patent would be so foreign to the manifest purpose of the paragraph as to have no connection with it. It could not possibly be said to have been contemplated as a subject matter of agreement between the parties. Notwithstanding then the broad language of the paragraph descriptive of formulas, etc., generally, yet the complainant's rights are to be re-

stricted to such formulas, etc., as relate to the particular article mentioned.

Decree accordingly.