Milton ROSS and Arnold J. Hoffman,
Plaintiffs,

v.

VENEZUELAN–AMERICAN INDE-
PENDENT OIL PRODUCERS ASSO-
CIATION, INC., Defendant.

Civ. A. No. 2825.

United States District Court
D. Delaware.

May 28, 1964.

Milton Ross, New York City, pro se.

Arnold J. Hoffman, New York City, pro se.

STEEL, District Judge.

Plaintiffs, two attorneys, sued defendant to recover fees for services rendered in obtaining a reduction of federal income taxes and penalty assessed against defendant. A default having been entered against defendant by the Clerk under F.R.Civ.P. 55(a) because of defendant's non-appearance, plaintiffs now move under F.R.Civ.P. 55(b) (2) for default judgments of $102,858.71 for each plaintiff.

Ross, one of the plaintiffs, is a citizen of New York. Hoffman, the other plaintiff, is a citizen of New Jersey. Defendant, a dissolved Delaware corporation, is a citizen of Delaware for purposes of jurisdiction. Stentor Electric Mfg. Co. v. Klaxon Co., 115 F.2d 268, 271 (3rd Cir. 1940), rev'd on another ground 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs. Jurisdiction exists under 28 U.S.C. § 1332(a) (1).

Defendant was incorporated in Delaware on February 20, 1956 for the purpose of conducting activities relating to petroleum and petroleum products. On January 20, 1960 defendant's charter was voided by proclamation of the Governor for failure for two years to pay Delaware franchise taxes. Defendant's only assets are interests in oil rights in Venezuela which it purchased from the Venezuelan government.

On June 15, 1962, defendant was served with a notice of deficiency for federal income taxes for the year ending July 31, 1957, and a penalty because the 1957 return was not filed within the time provided by law.

On September 12, 1962, plaintiffs were employed by defendant to represent it in contesting the deficiency and penalty. A written agreement of employment was executed by the Vice President and Secretary of defendant and delivered to plaintiffs in New York. It provided for compensation, based upon a percentage formula, contingent upon plaintiffs' success in obtaining a reduction of the deficiency and penalty, and for plaintiffs' out-of-pocket expenses.

As a result of plaintiffs' efforts, a settlement between defendant and the United States was consummated on December 24, 1963 by virtue of which the tax deficiency and penalty initially asserted was reduced by $683,434.75. On January 10, 1964, the Tax Court entered a decision reflecting this reduction.

■ On December 27, 1963, plaintiffs submitted a bill to defendant for $200,-602.05, the sum claimed to be due under the employment contract. The defendant, through its Vice President and Board Chairman, acknowledged in writing that the amount claimed was due. The bill was not paid, and plaintiffs began the instant action on March 26, 1964. Since the dissolution of defendant had been proclaimed more than four years earlier, process was served upon the Secretary of State on March 30, 1964, under 8 Del.C. § 321. The service was valid. International Pulp Equipment Co. v. St. Regis Kraft Co., 54 F.Supp. 745 (D.Del. 1944).

Plaintiffs' motion for a default judgment was heard by the Court on May 7, 1964, after due notice thereof to defendant. It failed to appear. Both plaintiffs testified and submitted documentary evidence in support of the motion.

## VALIDITY OF EMPLOYMENT CONTRACT

The notice of deficiency and penalty was served upon defendant less than three years after its dissolution. Thereafter, and still within the three year period, defendant contracted with plaintiffs to contest the deficiency and penalty in the Tax Court and otherwise.

■ 8 Del.C. § 278 provides that a dissolved corporation shall be continued a body corporate for a term of three years after dissolution for the purpose of prosecuting and defending actions, suits, or "proceedings" by or against it, and to enable it gradually to settle and close its business. The service of the notice of deficiency and penalty on June 15, 1962 constituted the commencement of a "proceeding" against defendant within the meaning of 8 Del.C. § 278. Bahen & Wright, Inc. v. Commissioner of Internal Revenue, 176 F.2d 538 (4th Cir. 1949). Since Section 278 empowered defendant to contest the notice of its tax and penalty deficiency which was served within the three year period after defendant's dissolution, it implicitly authorized defendant to employ plaintiffs within such period to act on its behalf in such contest. Application of Peters, 271 App.Div. 518, 67 N.Y.S.2d 305, 310 (1946), modified, 296 N.Y. 974, 73 N.E. 2d 560 (1947), recognized this as the logical result under a New York statute similar to § 278.

■ Whether the Vice President and Secretary of defendant who signed the employment contract were authorized to do so, need not be determined. Even if it be assumed that they had no actual authority, the defendant impliedly ratified the contract by accepting the bene-

fits of plaintiffs' services in securing the substantial reduction in the deficiency and penalty. Chard v. Ryan-Parker Const. Co., 182 App.Div. 455, 169 N.Y.S. 622, 626 (1918); Levitas v. Yarmel Realty Corp., 127 Misc. 627, 216 N.Y.S. 419, 421 (1926). New York law governs the ratifying effect of defendant's acceptance of the benefits. Restatement—Conflict of Laws, § 331° (1934).

It follows that the contract between plaintiffs and defendant was valid.

## CAPACITY OF DEFENDANT TO BE SUED

■ The present action was not brought until after the expiration of three years from the time when defendant was dissolved. Its capacity to be sued under the circumstances is determinable by Delaware law. United States v. Village Corp., 298 F.2d 816, 817 N. 4 (4th Cir. 1962); F.R.Civ.P. 17(b).

8 Del.C. § 278 provides " * * * with respect to any action, suit or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions, suits or proceedings so begun or commenced, be continued bodies corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed".

Section 279 empowers the Court of Chancery, upon the application of a creditor or stockholder, who shows good cause therefor, to appoint one or more directors as trustees or one or more persons as receivers of the corporation, to take charge of its estate and effects, and to collect its debts and property "with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, * * * *".

Read together, §§ 278 and 279 would appear to authorize the entry of a judgment against a dissolved corporation after the expiration of three years from

its dissolution only if action were begun before dissolution or within the three year period, and to require the appointment of trustees or receivers as a condition to the institution of an action after the expiration of the three year period. This view finds support in the *rationale* of Matthies v. Seymour Manufacturing Company, 23 F.R.D. 64, 91–93 (D.Conn. 1958), and Atkins v. W. A. Harriman & Co., Inc., 69 F.2d 66 (2nd Cir. 1934), each of which involved an interpretation of the Delaware dissolution statutes. In Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634 (1927) the Court stated that corporations exist only by legislative act and that if the life of a dissolved corporation "is to continue even only for litigating purposes", it is necessary that there should be some statutory authority for the prolongation (273 U.S. p. 259, 47 S.Ct. p. 392).

■ Despite the language of §§ 278 and 279 which seemingly indicates that no judgment can be obtained against a dissolved corporation in an action begun more than three years after its dissolution without the prior appointment of trustees or receivers, Wax v. Riverview Cemetery Co., 2 Terry 424, 41 Del. 424, 24 A.2d 431 (1942), sustained the validity of such a judgment without discussing the provisions of §§ 278 and 279. Wax, having contracted to buy real estate, sued the vendor to recover a deposit which he (Wax) had made upon the purchase price, alleging that the vendor could not provide him with a good title. The defendant's title derived from one who had purchased the property at a sale under a writ of *levaris facias*. The judgment on which the *levaris facias* issued had been obtained in a proceeding begun by a writ of *sci. fa.* sur mortgage against the corporate mortgagor nine years after it had been dissolved. The Court held that the purchaser had acquired good title even though no trustees or receivers had been appointed for the corporate mortgagor when the action of *sci. fa.* sur mortgage had begun. The decision of the court

rested primarily upon the theory that the Franchise Tax Act was purely a revenue measure, and the corporation was empowered to have its charter revived at any time. The Court said that despite the passage of three years following its dissolution, the corporation was "not completely dead" but merely in "a state of coma", during which time it could still serve "as obligor of a debt". The Court said that "we cannot conclude that the legislature intended to penalize the creditor and destroy its rights."

It is to be noted that the judgment involved in Wax was against specific property which was subject to a mortgage, 2 Wooley, Delaware Practice, § 1373, whereas in the instant case plaintiffs seek a general judgment. This, however, provides no reason for distinguishing the Wax case from the instant one. The writ of *sci. fa.* sur mortgage is in the nature of an original writ, 2 Wooley Delaware Practice §§ 1309, 1366. It performs the double function of a summons and a declaration, 2 Wooley Delaware Practice, § 1367.[1] When the writ is pleaded to issue, a trial ensues which involves the same procedures as any other *in personam* action, 2 Wooley Delaware Practice § 1372. In the Wax case the Court did not attempt to dif-

ferentiate an action begun by a writ of *sci. fa.* sur mortgage from the usual *in personam* action, or to base its decision upon any distinction between the two.[2]

The Wax decision was referred to with approval by the Supreme Court in Addy v. Short, 8 Terry 157, 47 Del. 157, 89 A. 2d 136 (1952) when it held that neither the dissolution of a corporation nor the expiration of the three year period following dissolution extinguished a possibility of a reverter to land which had previously been reserved to it.

■ Despite what appears to be the questionable construction placed upon the dissolution law in the Wax case, it is binding upon this Court since its jurisdiction in the instant action is based solely upon diversity of citizenship. See West v. American Telephone and Telegraph Co., 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940).

Plaintiffs' motion will be granted. Plaintiffs' claim being for an uncontested sum certain, judgments in favor of each plaintiff will be entered in the amount of $102,858.71 against defendant. This amount is computed as follows: $100,301.03 due under the contract, $2,557.68 interest from December 27, 1963 to May 28, 1964.

1. Since the effective date of the Superior Court Rules adopted in 1948, an action to execute upon mortgaged property for breach of a condition of the mortgage is begun by the filing of a complaint. Rule 3(a), Appendix Form 13, Del.C.Ann. Otherwise, the proceeding is still by *scire facias* sur mortgage. 10 Del.C. §§ 5061 et seq.

2. Compare Sanders v. Vari, 37 Del.Ch. 353, 143 A.2d 275 (1958) where the Court sustained the title of a purchaser at a tax sale which was based upon an action brought more than three years after the corporate tax debtor had been dissolved. The Court stated that the tax collection action was *"quasi in rem"* and not "strictly an *in personam* action" since it was begun by attachment under § 1351, R.C.Del.1935, now 9 Del.C. §§ 8741–8750. The Court rejected the argument that the action was improperly brought because no trustees or receivers had been appointed under § 279. The Court relied in part upon the statement in Wax that a corporation can still be the "obligor of a debt", even though its dissolution occurred more than three years earlier.