**Harvey B. JOHNSON**

v.

**HELICOPTER & AIRPLANE SERVICES CORPORATION et al.**

Civ. No. 72–832–Y.

United States District Court, D. Maryland.

Nov. 13, 1975.

Lawrence F. Rodowsky, Baltimore, Md., and John P. McKenna, Washington, D. C., for plaintiff.

Robert R. Winter, Baltimore, Md., for defendant Societe Nationale Industrialle Aerospatiale of France.

Francis J. Ford, Rockville, Md., for defendant Societe Turbomeca of France.

Joseph S. McCarthy, Rockville, Md., for defendant Fairchild Industries, Inc.

John S. Yodice, Bethesda, Md., for defendants Helicopter & Airplane Service Corp., Richard H. Sanders and Robert Sanders.

Edmund P. Dandridge, Jr., Baltimore, Md., for defendant Republic Aviation Corp.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The issue presently, and finally, before this Court is a determination under Fed.R.Civ.P. 17(b) of RAC Corporation's capacity to be sued in this products liability suit. In a memorandum and order filed December 20, 1974, the Court found that it did not have personal jurisdiction over RAC, and transferred the case to the United States District Court for the Southern District of New York. RAC then moved to strike the order transferring the case, having stipulated on January 17, 1975, to a withdrawal of its motion to dismiss on the grounds of lack of personal jurisdiction and defects in service of process. The order transferring the case was set aside on February 6 in the interest of judicial economy.

## FACTS

RAC was originally incorporated in Delaware 1931 under the name Siversky Aircraft Corporation. In 1939 the name of the corporation was changed to Republic Aviation Corporation. Throughout its existence, the corporation's principal place of business was in Farmingdale, New York; it procured a license to do business in that state during the 1930's.

In 1965, the corporation sold all of its operating assets to another defendant in the instant action, Fairchild-Hiller Corporation. The corporation then changed its name to RAC Corporation and proceeded to wind up its affairs. On October 1, 1965, RAC's board of directors passed a resolution authorizing the filing of a certificate of dissolution for the company with Delaware's Secretary of State. That certificate was filed on November 19, 1968, and the Secretary issued a formal certificate of dissolution.

RAC has continued to prosecute certain tax claims with the United States and the State of New York in an effort to wind up its affairs prior to liquidation. The continued existence of the corporation is authorized under provisions of the Delaware corporation law which give a dissolved corporation a limited three-year existence to dispose of its affairs. 8 Del.Code Ann. § 278 (1975).

■ The corporation has not, however, surrendered its license to do business in New York, asserting that retention of the license is necessary in order to protect its right to pursue tax claims in that state.[1] Those proceedings have not concluded and RAC is still carrying on significant activities and transactions. It regularly holds meetings of its board of directors, files state and federal tax returns, takes out insurance (including insurance relevant to this case), and issues shareholder reports. RAC has also continued to invest its corporate assets; since 1973, it has invested a substantial percentage of its multimillion dollar assets in short-term commercial paper.

---

1. This assertion is erroneous. A certificate of authority to do business is not required to prosecute claims in the state, N.Y.Bus.Corp. Law § 1301(b)(1) (McKinney 1963). In addition, the state has fully protected itself against foreign corporations who seek to surrender their certificates of authority in order to avoid tax liabilities. *See* N.Y.Bus.Corp. Law § 1310(b) (McKinney 1963).

At a hearing on June 1, 1973, this Court granted RAC's motion to dismiss under Fed.R.Civ.P. 12(b)(6) for lack of capacity. That decision was appealed to the Fourth Circuit, which held that the motion should have been treated as one for summary judgment under Fed. R.Civ.P. 56, and remanded to this Court to provide the parties a reasonable time for discovery. *Johnson v. RAC Corporation*, 491 F.2d 510 (4th Cir. 1974).

The plaintiff conducted discovery relevant to the jurisdictional and capacity motions, and RAC then renewed its motion to dismiss, asserting that discovery had not uncovered any information requiring a different result than that which the Court reached on June 1, 1973. This is correct.

The opinion of the Fourth Circuit noted that "the right to maintain a products liability suit against a dissolved corporation, in the process of liquidation under statutory authority, for post-dissolution-accrued claims has received at best limited judicial or textbook consideration." *Johnson v. RAC Corporation*, 491 F.2d at 514 (footnote omitted). This would seem to invite a more lengthy examination of the question of capacity in this case than was given in the oral opinion of June, 1973, and the Court takes this opportunity to elaborate its reasoning fully.

### FEDERAL LAW

■ Rule 17(b) provides in part:

The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized.

This rule applies to dissolved as well as active corporations. *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 260, 47 S.Ct. 391, 71 L.Ed. 634 (1927) (capacity of dissolved corporation governed by state of incorporation); *Damon Alarm Corp. v. Am. Dist. Telegraph Co.*, 304 F.Supp. 83, 84 (S.D.N.Y.1969), *citing Melrose Distillers, Inc. v. United States*, 359 U.S. 271–272 (1959); 6 C.

Wright and A. Miller, Civil § 1563, at 738 n. 19 and accompanying text.

Cases concerning Rule 17(b) dwell on the technical question of capacity, but deal very superficially with the substantive nature of capacity itself. Plaintiff has asserted two alternative propositions concerning the nature of capacity under Rule 17: the first is that capacity means "general capacity," as opposed to "the capacity to be sued"; and the second is that capacity implies "general capacity to be sued" rather than the enforceability of a particular cause of action. The first proposition is erroneous; the second is correct.

■ Capacity is the ability of a particular individual or entity to use, or to be brought into, the courts of a forum. *Mather Constr. Co. v. United States*, 201 Ct.Cl. 219, 475 F.2d 1152, 1155 (1973); *Basch v. Talley Ind., Inc.*, 53 F.R.D. 9, 11 (S.D.N.Y.1971). It has no direct correlation to the conducting of business, the existence of an enforceable right, interest, cause of action, claim or defense, or whether a party is a real party in interest. *See DeFranco v. United States*, 18 F.R.D. 156, 159 (S.D. Cal.1955) (differentiated from cause of action); 6 C. Wright and A. Miller, Civil § 1559, at 727–28 (1971).

■ Thus, the plaintiff's assertion that if a corporation retains *any existence*, however tenuous, it has "capacity" and therefore may be sued in federal court, is a misconception of Rule 17. The rule was meant to be an adoption of local rules on capacity to sue and be sued, not an equation of capacity with the concept of "doing business." Uniformity is achieved among federal jurisdictions only insofar as the law interprets Rule 17(b) to provide that once a corporation is determined to have capacity to be sued in its original place of business, it may be sued in any federal court, regardless of the fact that the corporation may not have capacity to be sued in the particular state in which

the federal court is sitting. *Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et D'Armement,* 314 F.Supp. 439, 441 (S.D.N.Y.1970), *aff'd in part, rev'd in part on other grounds,* 451 F.2d 727 (2d Cir. 1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972). The cases cited by the plaintiff refute the idea of "general capacity" and support instead the proposition that once state law is interpreted to determine that a corporation has capacity to be sued, the actual place of suit is irrelevant.[2]

Therefore, when turning to Delaware law, the appropriate inquiry is the *capacity to be sued* of a voluntarily dissolved Delaware corporation which has failed to surrender its certificate of authority to do business in New York and which is continuing to "wind up" its business after the three-year period provided in the Delaware corporation law for asserting claims against the corporation.

## DELAWARE LAW

Since RAC was originally incorporated in Delaware, its capacity to be sued is governed by the law of that state.

■ At common law, the dissolution of a corporation was its civil death; dissolution abated all pending actions by and against a corporation, thus terminating abruptly its capacity to sue and be sued. *Melrose Distillers, Inc. v. United States,* 359 U.S. 271, 272, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959); Note, *Suits By and Against Dissolved Corporations,* 48 Iowa L.Rev. 1006 (1963).[3]

In order to alter the common law and prolong the life of a corporation past dissolution, statutory authority is necessary, *Oklahoma Gas Co. v. Oklahoma,* 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634 (1927); *Johnson v. RAC Corp.,* 491 F.2d 510, 511–12 n. 3 (4th Cir. 1974).

The common law has been supplanted in Delaware, as in all states, by a statute which prolongs the life of a corporation in order to allow the corporation to dispose of its affairs in an orderly fashion. Section 278 of the Delaware Corporation Law, 8 Del.Code Ann. § 278 (1975), which provides for the continued limited existence of a corporation after dissolution, reads in part:

278. Continuation of corporation after dissolution for purposes of suit and winding up affairs.

All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of

2. *See, e. g., Tolson v. Hodge,* 411 F.2d 123 (4th Cir. 1969); *Jones v. Schellenberger,* 196 F.2d 852 (7th Cir.), *cert. denied,* 344 U.S. 876, 73 S.Ct. 171, 97 L.Ed. 679 (1952); *John W. Johnson, Inc. v. Atlantic States Constr. Co.,* 276 F.Supp. 379 (D.Md.1967). The legislative history of Rule 17(b) also supports this view. One of the more lucid syntheses of the rule was made before the House Judiciary Committee:

The capacity to sue is one thing and how, when, and where to sue is another, and we must always bear in mind that we are dealing only with capacity, technical capacity. This rule simply means this, that if under the law of Delaware a corporation is organized and under the law of its domicile, Delaware, it has the capacity to sue or be sued, then it can be sued or sue

anywhere and if it has not any capacity to sue or be sued under the law of its domicile, it cannot sue or be sued anywhere.

Hearings before House Comm. on the Judiciary, 75th Cong., 3d Sess., ser. 17, at 20 (1938), *quoted in Hurlburt v. Eno,* 17 F.R.D. 230, 232 (D.Vt.1955).

3. The civil death of a corporation has been likened to that of the death of a person, *see, e. g., Oklahoma Gas Co. v. Oklahoma,* 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634 (1927); *United States v. Safeway Stores,* 140 F.2d 834, 836 (10th Cir. 1944), although this characterization has been termed "an uncritical search for analogies," Marcus, *Suability of Dissolved Corporations—A Study in Interstate and Federal-State Relationships,* 58 Harv.L.Rev. 675, 677 (1945) [hereinafter referred to as Marcus].

prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities, and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings, be continued bodies corporate beyond the 3 year period and until any judgments, orders, or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

The continued existence of the corporation is thus strictly limited under Delaware law to a few specific situations:

First, under Section 278, a corporation's existence is continued for three years after dissolution. During that time, the corporation may not conduct the business for which it was originally incorporated. *Addy v. Short,* 47 Del. (8 Terry) 157, 165, 89 A.2d 136, 139 (1952); *Broza v. Aluminum Cleaner Corp.,* 18 Del.Ch. 305, 309, 159 A. 430, 432 (Ch.1932). It may conduct only

such business as is "incidental and necessary to . . . wind up." *Gamble v. Penn Valley Crude Oil Corp.,* 34 Del. Ch. 359, 364, 104 A.2d 257, 260 (Ch. 1954); *McBride v. Murphy,* 14 Del.Ch. 242, 249, 124 A. 798, 801 (Ch.1924), *aff'd,* 14 Del.Ch. 457, 130 A. 283 (Sup. Ct.1925) (devise of land could not be taken unless acquisition was essential to winding up); E. Folk, *The Delaware General Corporation Law—A Commentary and Analysis,* 432–34 (1972). The power given to the corporation to dispose of its affairs during this period expressly includes the capacity to sue and be sued; Delaware traditionally held that after dissolution, a corporation could sue and be sued *only* during this period. *See e. g., Townsend v. Delaware Glue Co.,* 12 Del.Ch. 25, 27, 103 A. 576, 577 (Ch.1918).

Second, under Section 278, the three-year winding up period may be extended by the Court of Chancery. Such an extension would probably prolong the corporation's capacity to sue and be sued.[4]

Third, automatic prolongation of the life of the corporation beyond the three-year period is provided for by Section 278 for the limited purpose of allowing actions previously commenced by and against the corporation to continue to their expiration. This obviously does not prolong the capacity of the corporation to sue and be sued, but maintains the continuance of the corporation for the benefit of the existing suits.[5]

4. The plaintiff argues that RAC should have applied for an extension of its winding-up period contemporaneous with the time during which it took to dispose of its tax claims. Not only would this interpretation of Section 278 produce the inequitable result of subjecting different corporations to different terms of exposure to suit depending upon the longevity of whatever litigation they pursued, it would render the last sentence of Section 278 nugatory. As discussed, *infra,* that sentence continues claims pending at the end of the three-year winding-up period to their conclusion without prolonging the capacity of the corporation to sue and be sued without any necessity of recourse to the Court of Chancery.

5. This differentiation between the period during which claims may be brought against and by the corporation and the period during which the corporation may wind up its affairs has been criticized. Henn & Alexander, *Effect of Corporate Dissolution on Products Liability Claims,* 56 Cornell L.Rev. 865, 912–13 (1971). The authors suggest that the two periods should be contemporaneous. This scheme, however, might prolong the winding-up period infinitely. Should the corporation bring a suit in the first year after dissolution (Year 1) which does not end until Year 7, the corporation could be sued in Year 6. That suit, in turn could continue until Year 15, leaving the corporation open to suit in Year 15, and so on.

Fourth, Section 279 of the corporation law provides that the Court of Chancery may at any time appoint receivers or trustees to conduct the business of the corporation.[6] The statute expressly provides that the appointment of a receiver or trustee continues or revives the corporation's capacity to sue and be sued. *See Harned v. Beacon Hill Real Estate Co.*, 9 Del.Ch. 411, 420–23, 84 A. 229, 234–35 (1912); *but cf. Matthies v. Seymour Mfg. Co.*, 23 F.R.D. 64, 92 (D. Conn.1958), *rev'd on other grounds*, 270 F.2d 365 (2d Cir. 1959), *cert. denied*, 361 U.S. 962, 80 S.Ct. 591, 4 L.Ed.2d 544 (1960) (Section 279 does not authorize suits by shareholders as representatives of dissolved corporation after winding-up period ends).

▮ In summary, then, notwithstanding other indicia of corporate existence continued by the statutes, Sections 278 and 279, read jointly, seem to indicate that a corporation has capacity to sue or be sued 1) during the three-year winding-up period; 2) beyond three years if an extension has been procured; or 3) if a receiver or trustee has been appointed by the Court of Chancery. *Ross v. Venezuelan-American Indep. Oil Prod. Ass'n, Inc.*, 230 F.Supp. 701, 703 (D.Del.1964).

None of these conditions is present in this case, where suit was brought fully a year after the three-year winding-up period provided in Section 278 had passed. An extension of this period was never procured and a receiver has never been appointed.

Nevertheless, judicial interpretation of Sections 278 and 279 leaves the comprehensiveness of the statutory scheme in some doubt. Seven cases deal in some

depth with the question of corporate existence after dissolution and the expiration of the three-year winding up period. A brief synopsis of these cases is set forth in chronological order.

In *Harned v. Beacon Hill Real Estate Co.*, 9 Del.Ch. 411, 84 A. 229 (1912), a corporation was involuntarily dissolved for failure to pay franchise taxes. Nevertheless, during the winding-up period, the corporation failed to dispose of certain real property to which it had title. Some years later stockholders of the corporation filed a bill in Chancery for the appointment of a receiver to sell the land for the benefit of the stockholders. Thereafter the same parties who had filed the bill sought to overturn the sale of the land on the ground that the corporation did not have capacity to be named a party defendant in the proceeding to appoint a receiver. The court found it was necessary to name the corporation as a defendant in order to give it notice of the appointment of a receiver. The appointment of the receiver, in turn, was found justified since the corporation had not disposed of property to which it retained title.

The next suit involved a corporation which had been involuntarily dissolved for nonpayment of taxes and which later revived its charter. The corporation was held to have had sufficient corporate existence in the interim to file for a Title XI reorganization, *Watts v. Liberty Royalties Corp.*, 106 F.2d 941 (10th Cir. 1939). Revival of the charter retroactively validated the application for reorganization. The court specifically addressed itself to the effect of an involuntary dissolution under Delaware law, concluding that since a corporation can revitalize itself by paying its back taxes,

6. Section 279 provides in part:
 When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any . . . one, who, in the Court's discretion, shows good cause therefor, at any time, may either appoint one or more of the directors of the corporation to be trustees, or appoint one or more persons to be receivers, of and for the cor-

poration, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid . . . that may be necessary for the final settlement of the unfinished business of the corporation.

the corporation's powers after dissolution and before revival are not extinct, but suspended. *Id.* at 944.

Probably the most ethereal precedent is *Wax v. Riverview Cemetery Co.*, 41 Del. (2 Terry) 424, 24 A.2d 431 (Super. Ct.1942), where a holding company took title to a house and took out a mortgage on the property. It then conveyed the premises and the accompanying mortgage to a third party. The holding company's charter was then revoked for nonpayment of taxes. Nine years later the mortgagee foreclosed on the home and bought the property at a judicial sale. When the mortgagee attempted to sell the property, however, the prospective purchaser challenged the marketability of the title on the grounds that the holding company was not properly served as a defendant in the foreclosing proceedings. Once again the Delaware court took refuge in the taxing statute in order to preserve the marketability of title. It held that proclamation of forfeiture for nonpayment of taxes "does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity" and the corporation could therefore serve as a "repository of title and as obligor of a debt." 41 Del. at 436, 24 A.2d at 436. The court also noted that appointment of a receiver would be futile since the corporation had no assets, and concluded that the corporation was an appropriate defendant in the foreclosure proceeding because the taxing statute could not be interpreted "to penalize the creditor and destroy its rights." *Id.*

The next important case is *Addy v. Short*, 47 Del. (8 Terry) 157, 89 A.2d 136 (1952), which dealt with a voluntarily dissolved corporation, and held simply that after dissolution and winding up, a corporation still had sufficient existence to take title to land by possibility of reverter. In *Addy* the existence of the corporation to serve as a repository

for title to land was in question; capacity or not. Trustees had been appointed by the Court of Chancery to deal with the corporation's "unfinished business."[7]

*Sanders v. Vari*, 37 Del.Ch. 353, 143 A.2d 275 (1958), like *Wax*, involved a challenge to marketability of title. A development corporation which held title to certain property was involuntarily dissolved for nonpayment of taxes. Eight years later the state levied on the property for unpaid taxes and the property was sold to the plaintiff. The plaintiff then attempted to sell the land to the defendant, but the defendant challenged the plaintiff's title, stating that the development company had been improperly named a defendant in the proceedings to collect the tax and sell the land. Instead, the defendant maintained, a receiver should have been appointed to represent the company under Section 279.

The court relied on *Wax*, holding that the corporation had sufficient existence to serve as a repository of title. Because the development company had been dissolved for nonpayment of taxes, the court also emphasized that the action to sell land in question had been quasi in rem and therefore the court was "not confronted with a strictly in personam action." 37 Del.Ch. at 356, 143 A.2d at 276.

The forum then shifted from the state to the federal courts. In *Ross v. Venezuelan-American Indep. Oil Prod. Ass'n*, 230 F.Supp. 701 (D.Del.1964), two attorneys, employed during the three-year winding-up period by a Delaware corporation that had been dissolved for nonpayment of taxes, sued after the three-year period to receive their fees. The district court interpreted Sections 278 and 279 to authorize the entry of a judgment against a dissolved corporation after the expiration of three years after dissolution only "if the action were begun before dissolution or within the three year period" or if trustees or re-

---

7. The court, in dictum, noted the Section 43 of the Delaware corporation law, the predecessor of Section 279, applied equally to voluntarily and involuntarily dissolved corporations. 89 A.2d at 140. The scope of this dictum is certainly questionable.

ceivers had been appointed under Section 279. *Id.* at 703. Nevertheless, the court stated that it was bound by *Wax*, which had authorized the entry of such a judgment notwithstanding the failure to comply with the conditions of Sections 278 and 279. The court also found that there was no material distinction between the nature of the action in *Ross* and that in *Wax*.

Finally, in *Smith-Johnson Steamship Corp. v. United States,* 231 F.Supp. 184 (D.Del.1964), the district court brought a temporary halt to the gradual expansion of corporation capacity begun in *Harned*. In *Smith-Johnson*, a corporation had voluntarily dissolved itself under 8 Del.Code Ann. § 275, and within the three-year winding-up period began a libel action against the United States. After the three-year winding-up period had passed, the United States sought to assert a cross-libel arising from the same contract against the steamship corporation. The court held that the cross-libel could not be maintained because, as an independent cause of action, it was barred by the quasi-statute of limitations contained in Section 278 which limited the capacity of the corporation to sue and be sued. The court found that the cross-libel was not part of the same "action, suit or proceeding" instituted by Smith-Johnson and therefore did not come within the last sentence of Section 278. The court stated:

> [T]he three year restriction on the right to bring suits contained in § 278, while not a statute of limitations per se, nevertheless, represents a public policy that all suits by or against dissolved corporations must be commenced within three years following dissolution and that by way of analogy with the great majority of cases interpreting statutes of limitations, an affirmative counterclaim or cross-libel cannot be filed after the period of the applicable statute of limitations has expired. . . .

231 F.Supp. at 186.

The court concluded that although Section 278 was not a statute of limitations because Section 279 authorized the appointment of receivers to prosecute and defend suits by or for the corporation, it operated as a statute of limitations to prohibit the commencement of actions against the corporation more than three years after dissolution by extinguishing the corporate capacity to sue and be sued.

The court distinguished *Wax* and *Ross* summarily in a footnote on the ground that corporations dissolved for nonpayment of taxes were dissolved as a revenue measure and could therefore be revived. *Id.* at 186 n. 2.

This Court finds the reasoning of *Smith-Johnson,* as it interprets the law of Delaware, fully applicable to this case. Nevertheless, the precedent set forth above deserves more than a passing reference.

*Sanders* and *Wax* represent the unfortunate precedent which ensues from an effort to reconcile a legal fiction with economic necessity. The courts in those cases were required to insure that the validity of the chain of title of real estate was not disrupted by the legal extinction of one of its links. The appointment of a receiver in such a case to serve as recipient for service in a foreclosure suit would be a waste of time and effort since the corporation had no assets involved and merely served as a passive link in the history of ownership. Therefore, the courts instituted the "coma" theory of corporate existence which resulted when a corporation was dissolved for nonpayment of taxes. This coma-like existence allowed the corporation to serve as a vital link in the chain of title, and therefore gave it capacity to be sued, but not necessarily to be active in a suit to foreclose on the land.

*Watts* and *Ross* seized on this precedent to validate the capacity of involuntarily dissolved and extinct corporations to sue and be sued in proceedings other than actions involving real estate. For-

tunately, these cases do not represent the law of Delaware on which this Court must rely under Rule 17.

In any case, these four cases may be distinguished on the ground that they dealt with involuntary dissolution and were based on an unfortunate fiction of corporate capacity. *Cf. Johnson v. RAC Corp.*, 491 F.2d 510, 511 n. 2 (4th Cir. 1974). *Addy* and *Harned* may also be distinguished on the ground that the corporations sued in those cases clearly had capacity to sue and be sued because receivers had been appointed by the Court of Chancery to represent the corporations. It should be repeated that *Addy* is also distinguishable because the case did not in fact deal with the question of capacity to sue or be sued but with the question of corporate existence sufficient to take title to land.

This leaves *Smith-Johnson,* which interpreted Section 278 wisely and with an appropriate consideration and resolution of the two conflicting principles which gave rise to Section 278. The first of these principles is that corporations should not be able to avoid their debts and other liabilities by dissolution. It is for this purpose, and to enable corporations to dispose of their affairs in an orderly fashion, that the three-year winding-up provision was created.

The second principle reflected in Section 278 is that there should be a definite point in time at which a corporation is terminated. *See Bishop v. Schield Bantam Co.,* 293 F.Supp. 94, 96 (N.D.Iowa 1968). To allow a proliferation of suits dependent upon the time which it takes a corporation to wind up its business would be unfair to the corporation and contrary to the purpose of orderly and timely dissolution. Continued prosecution of such suits would contribute to a "continual dribble of business activity" which might prolong the winding-up process indefinitely while directors and shareholders become harder to locate and records of the corporation become stale or misplaced. *Id. See also* n. 4, *supra.*

Section 278 represents a workable compromise between these two principles. The corporation is continued so that those who have been aggrieved by its activities may come forward with their claims. But after a reasonable time, the right to assert such claims is extinguished and the corporation is allowed to close its affairs without further threat of additional financial liabilities.

■ RAC is bringing to a close its business, and its activities are consistent with that end. While the corporation is still holding assets, it naturally retains a board of directors, holds meetings, issues reports and invests its assets. To do otherwise might be a breach of the fiduciary duty owed by the directors of the corporation to manage the corporation's affairs. Nevertheless, three years have passed since dissolution, and although RAC is still conducting certain proceedings brought during the winding-up period, it has lost the capacity to sue and be sued in new actions, including the one instituted by the plaintiff here.

## NEW YORK LAW

The plaintiff contends that even though RAC does not have capacity to be sued under Delaware law, it has the capacity to be sued under New York law under either of two theories. The first is that, having failed to surrender its certificate of authority to do business in New York,[8] it still retains capacity to be sued there under the theory of *Dr. Hess & Clark, Inc. v. Metalsalts Corp.,* 119 F.Supp. 427 (D.N.J.1954). The second is that RAC is doing business in New York and is therefore a *de facto* corporation or a corporation by estoppel suable as a domestic corporation in New

8. Once a corporation is dissolved in its state of incorporation, it must deliver a certificate of its dissolution to the New York Department of State. N.Y.Bus.Corp.Law § 1311 (McKinney 1963).

York without regard to its status under Delaware law. Neither theory is sufficient under the facts here.

The first theory fails immediately under the language of Rule 17(b) that capacity of a corporation is to be determined by the "law under which it was organized." [9]

Like many states, New York has passed a "long-arm" statute allowing suits against viable foreign corporations which carry on activities in the state. N.Y.Civ.Prac.Law § 302 (McKinney 1972). New York also conditions the issuance of a license to do business to a foreign corporation on the agreement of the corporation to designate the secretary of state to accept service of process on behalf of the corporation. N.Y.Bus. Corp.Law § 1304(a)(5) (McKinney 1963). This is entirely justified, because a state should be able to regulate the activities of corporations doing business within its boundaries. Such regulation is particularly appropriate where, as here, a corporate charter is the only link that a corporation has with its state of incorporation, and the majority of its business is conducted in a foreign jurisdiction.

 Nevertheless, under Rule 17 (b) the capacity of a corporation is determined by the state of its organization. This means that unless a corporation establishes an independent existence in a foreign jurisdiction, its capacity to be sued is governed *only* by the state of its incorporation. Should the corporation be dissolved, its life may be prolonged by a statute such as Section 278 in its state of organization, but once that winding-up period has passed, the corporation ceases to exist for the purposes of suit in any federal court.

The State of New York has recognized this principle. In *Tribble v. Bauer, Pogue & Co.*, 181 Misc. 741, 43 N.Y.S.2d 263 (Sup.Ct.1943), *rev'd*, 268 App.Div. 906, 51 N.Y.S.2d 754 (1944), service of process was allowed to issue against a foreign corporation six years after the corporation had been dissolved in Delaware on the grounds that the corporation had, on surrender of its certificate of authority to do business, designated the secretary of state to receive process. On appeal the service of process was vacated and the action dismissed in a brief opinion which cited *In re National Surety Co.*, 283 N.Y. 68, 27 N.E.2d 505 (1940), *cert. denied sub nom. Laughlin v. Pink*, 311 U.S. 707, 61 S.Ct. 175, 85 L.Ed. 459 (1940), in which the court stated, "The statutes of a foreign jurisdiction can in no way modify, change or nullify the effectiveness of the dissolution of a corporation in the State of its incorporation." 283 N.Y. 68, 76–77, 27 N.E.2d 505, 508. New York courts have generally recognized that the dissolution of foreign corporations is governed by the laws of their domiciles, and is not affected by laws intended to govern dissolution of domestic corporations. *Sinnott v. Hanan*, 156 App.Div. 323, 141 N.Y.S. 505 (1913); *see generally*, 17 Fletcher on Corporations, ch. 67, § 8579, at 931 n. 70 and accompanying text (1960 rev. ed.).[10]

The Court is not swayed by the two cases advanced by the plaintiff. In the first, *Trounstine v. Bauer, Pogue & Co.*, 144 F.2d 379 (2d Cir.), *cert. denied*, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944), the appellate court noted with approval the district court's implication that the capacity of a corporation qualified to do business in New York survived dissolution in Delaware because on application for withdrawal of its license, it

---

9. This terminology has been described as "not happily phrased" by one critic who concluded that it might have been construed to prevent corporations from being sued in any jurisdiction but the state of organization. *See* Marcus, *supra* n. 3, at 690–92.

10. This view is consistent with the distinctive protective posture which New York has taken regarding suits in foreign jurisdictions against dissolved New York corporations. *See* Marcus, *supra* n. 3, at 694–96.

consented to suit on pre-dissolution causes of action. This language, however, is two-fold dictum. The court not only held that the capacity issue had been waived and was not properly before the court, but the corporation had been sued within the three-year winding-up period provided by Delaware law.

*Dr. Hess & Clark, Inc. v. Metalsalts Corp.*, 119 F.Supp. 427 (D.N.J.1954), is directly on point and directly contrary to this Court's reasoning. There a corporation had been dissolved in Illinois and had neglected to surrender its certificate of authority to do business in New Jersey. The corporation was sued in New Jersey long after the two-year winding-up period provided in the Illinois corporation law had passed. The district court held that once corporations leave their places of incorporation, they subject themselves to the laws of those states in which they choose to operate. *Id.* at 428. They concluded that once the corporation had failed to follow the procedure prescribed by New Jersey to end its existence there, New Jersey citizens retained the right to bring the corporation into the courts of the state.

This reasoning is rejected for two reasons. The first is the language of Rule 17(b), noted above. The second is that once a corporation has undertaken to dissolve itself and has ceased to do the business which it was incorporated to do, the statute of the state of its incorporation which brings the corporation to a definite end should not be subverted by provisions which govern the corporation's capacity in a state in which it chose to do business while it was still a viable entity. *Cf. Martyne v. American Union Fire Ins. Co.*, 216 N.Y. 183, 110 N.E. 502 (1915).

RAC's capacity to be sued in New York did not survive its dissolution in Delaware notwithstanding its failure to surrender its certificate to do business in New York.[11]

The second theory proposed by the plaintiff also falls short. RAC is simply not doing business in New York.[12] Although "doing business" language in different sections of the law is not always interpreted in the same way, a foreign corporation is not automatically determined to be doing business in the state of New York, so that it must apply for a certificate of authority to do business if it is pursuing an action, proceeding or claim, or holds meetings of directors or shareholders. *See* N.Y.Bus.Corp.Law § 1301(b)(1) and (2) (McKinney 1963). Generally, activities during dissolution, which include all those present activities of RAC mentioned by the plaintiff, are consonant with the winding-up process and are not an exercise by RAC of the business it was originally incorporated to do. The cases cited by the plaintiff bear no significant relation to the facts of this case, since they deal with corporations which continued to carry on the business for which they were formed notwithstanding dissolution or expiration of their corporate charters. *See Garzo v. Maid of the Mist Steamboat Co.*, 303 N.Y. 516, 104 N.E.2d 882 (1952); *Wilkins v. Sirael Realty Corp.*, 174 Misc. 1002, 21 N.Y.S.2d 1017 (Sup.Ct.1940).

Although there certainly may be consequences of RAC's failure to forfeit its license to do business in New York, that failure does not give RAC capacity to be sued in a federal court.

In accordance with the foregoing, it is this 13th day of November, 1975, by the United States District Court for the District of Maryland, ordered:

That the motion of RAC Corporation to dismiss be, and the same is, hereby granted.

---

11. In fact, RAC does not have authority to do business in New York even though its license has not been surrendered. *See* N.Y. Bus.Corp.Law § 1305 (McKinney 1963).

12. There is no need to address the suggestion that RAC is an investment corporation under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 *et seq.* (1970).