**Kevin GROSS, as receiver for Hougland Barge Line, Inc., a dissolved Delaware corporation, Plaintiff-Appellant,**

v.

**Frances M. HOUGLAND, et al., Defendants-Appellees.**

No. 81–5818.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1982.

Decided July 11, 1983.

Rehearing Denied Sept. 12, 1983.

James G. Apple, Bruce M. Reynolds, Stites, McElwain & Fowler, John Bartlett (argued), Louisville, Ky., for plaintiff-appellant.

Earle T. Shoup, Paducah, Ky., for Grimes.

W. David Denton, Denton & Keuler, Paducah, Ky., for Hougland.

Richard C. Roberts, Whitlow, Roberts, Houston & Russell, Paducah, Ky., for Allen and Kleet.

Before KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

The plaintiff-appellant, Kevin Gross, appeals from an order dismissing his diversity action for failure to state a claim upon which relief can be granted. Gross, a resident of Delaware, was appointed receiver for Hougland Barge Line, Inc., a dissolved Delaware corporation and was authorized to prosecute this lawsuit pursuant to Sec. 279 of the Delaware Corporation Code. The complaint alleges that diversity of citizenship exists and, thus, that the district court has jurisdiction based upon 28 U.S.C. Sec. 1332. The district court assumed that it had subject matter jurisdiction, but dismissed the action for failure to state a claim upon which relief could be granted. We reverse.

Hougland Barge Line was a closely held corporation doing business in Kentucky. On March 1, 1977, the corporation filed a certificate of dissolution with the Secretary of State of Delaware and filed documents with the Secretary of State of Kentucky which indicated that it was no longer transacting business in Kentucky. The corporation sold its assets and paid the applicable state and federal taxes. On March 14, 1980, the dissolved corporation paid an additional $150,240.06 in taxes, interest and penalties assessed by the United States and an additional $23,378.11 in taxes and penalties assessed by the Commonwealth of Kentucky.

Robert W. Hougland, Jr., a shareholder [1] of the dissolved corporation, petitioned the Delaware Court of Chancery for appointment of a receiver to bring an action on behalf of the dissolved corporation. In early March, 1981, the Court of Chancery appointed the plaintiff as receiver and authorized him to bring this action.[2] On March

---

1. Robert W. Hougland, Jr., is a resident of Houston, Texas. He owns 335 shares of stock in the dissolved corporation which he inherited from the estate of his father Robert W. Hougland, Sr., on July 11, 1977. Hougland, Jr., was not a shareholder at the time the certificate of dissolution was filed on March 1, 1977.

2. Plaintiff was appointed pursuant to Del.Ch.R. 150, which requires that receivers appointed to represent dissolved corporations must be residents of the State of Delaware.

11, 1981, the plaintiff filed an action naming four Kentucky citizens as defendants. The complaint alleges that the corporation's majority shareholder, its accountants, and its attorney were negligent in liquidating the corporation's assets and, consequently, that the corporation was required to pay additional taxes, penalties, lawyer's fees, and accountant's fees. The complaint also alleged that complete diversity of citizenship existed between the plaintiff, a Delaware citizen, and the defendants, all of whom are citizens of Kentucky.

Several defendants jointly moved to dismiss, asserting alternate grounds for dismissal. First, the defendants argued that the district court lacked subject-matter jurisdiction because diversity of citizenship was manufactured by the appointment of the plaintiff as receiver. *See* 28 U.S.C. Sec. 1359. Second, the defendants asserted that the complaint failed to state a claim upon which relief could be granted because Kentucky law did not allow a dissolved corporation to bring suit in Kentucky beyond two years after its dissolution. KRS 271A.515; *See* KRS 271A.525. The district court dismissed the complaint for failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6), concluding that the plaintiff was "asserting a cause of action not recognized in Kentucky." The district court did not decide whether it had subject-matter jurisdiction.

On appeal, the plaintiff addresses both branches of the motion to dismiss. He asserts that Kentucky is bound to give full faith and credit to the judgment of the Delaware courts which specifically appoints him as receiver and authorizes him to bring the suit under Sec. 279 of the Delaware Corp. Code; in the alternative, he argues that Kentucky law permits the suit to be maintained. Finally, the plaintiff asserts that as the statutory receiver for the dis-

solved corporation, his citizenship is controlling for purposes of determining whether diversity of citizenship exists. The plaintiff asserts that he is a citizen of Delaware and that the defendants are all citizens of Kentucky; thus, the plaintiff concludes that the district court had subject-matter jurisdiction based upon the parties' diverse citizenship.[3]

 Initially, we state our disapproval of the district court's decision to dispose of this action on the merits without first resolving the question of subject-matter jurisdiction. The federal courts are courts of limited jurisdiction; they have only such jurisdiction as is defined by Article III of the Constitution and granted by Congress. *See Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 372, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978); *Graves v. Sneed,* 541 F.2d 159, 161 (6th Cir.1976); *In re Carter,* 618 F.2d 1093, 1098 (5th Cir.1980) ("[D]ue regard for the constitutional allocation of powers between the state and federal systems requires a federal court scrupulously to confine itself to the jurisdiction conferred on it by Congress and permitted by the Constitution"). A federal court is not a general repository of judicial power; thus, it must satisfy itself that it has subject-matter jurisdiction over the dispute before it addresses the merits of the claims. *Memphis American Fed. of Teachers Local 2032 v. Board of Education,* 534 F.2d 699, 701 (6th Cir.1976) ("Without a *finding* that there is federal jurisdiction over a particular claim for relief, the federal courts are without power to proceed") (emphasis added). We believe that the *proper practice is to resolve all questions regarding subject matter jurisdiction prior to ruling upon the merits of the claim.* Consistent with these principles, we first consider whether the

**3.** If the plaintiff's citizenship is not considered for purposes of diversity jurisdiction, then the citizenship of the beneficiaries of the lawsuit must be considered, *e.g., McSparran v. Weist,* 402 F.2d 867, 870 (3rd Cir.1968) (must either look to the citizenship of representative or to citizenship of the party represented); the beneficiaries of this lawsuit are the shareholders, not the dissolved corporation. Three of the four shareholders of the dissolved corporation are Kentucky citizens, and all of the defendants are Kentucky citizens. Thus, this action must be dismissed for lack of subject-matter jurisdiction if the plaintiff was improperly appointed, because complete diversity of citizenship will not exist.

district court, and thus this court, has subject-matter jurisdiction.

■ Normally, a representative may rely upon his citizenship, rather than the citizenship of the party he represents, when he asserts federal jurisdiction based upon diversity of citizenship. *See Mecom v. Fitzsimmons Drilling Co., Inc.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). *Deposit Guaranty Bank and Trust v. Burton,* 380 F.2d 346, 348 (6th Cir.1967). When a fiduciary asserts federal jurisdiction under 28 U.S.C. Sec. 1332(a)(1), he may rely upon his citizenship if he can establish that he is the real party in interest by demonstrating that the law of the appointing authority permits him to sue in his own name, without joining any of the persons that he represents. *Burton,* 380 F.2d at 347–48. *See also C. Wright, A. Miller & Cooper,* Federal Practice and Procedure, Sec. 3606 at 628–29.

This principle is limited, however, by 28 U.S.C. Sec. 1359.[4] By enacting Sec. 1359, Congress sought to assure that ordinary contract and tort litigation is not diverted to the federal courts by litigants using devices to create the appearance, but not the substance, of federal diversity jurisdiction. *Kramer v. Caribbean Mills,* 394 U.S. 823, 838–39, 89 S.Ct. 1487, 1490, 23 L.Ed.2d 9 (1969) (assignment of a claim). The courts of appeal have interpreted Sec. 1359 to limit the scope of Sec. 1332 in cases involving administrators and guardians appointed for the apparent purpose of creating diversity of citizenship. *See e.g. O'Brien v. Avco Corp.,* 425 F.2d 1030 (2nd Cir.1969); *McSparran v. Weist,* 402 F.2d 867 (3rd Cir. 1968) *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) (guardian); *Messer v. American Gems,* 612 F.2d 1367, 1373–74 (4th Cir.1980) *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980); *Bass v. Texas Power & Light Co.,* 432 F.2d 763, 766 (5th Cir.1970) *cert. denied,* 401 U.S. 975 (1971); *Betar v. DeHavilland Aircraft of Canada, Ltd.,* 603 F.2d 30 (7th Cir.1979)

*cert. denied,* 444 U.S. 1098, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1980); *Rogers v. Bates,* 431 F.2d 16 (8th Cir.1970) (conservator); *Hackney v. Newman Memorial Hospital,* 621 F.2d 1069, 1070–71 (10th Cir.) *cert. denied,* 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 244 (1980). These courts have concluded that the appointment of an administrator with diverse citizenship is not dispositive of the jurisdictional question, even if the representative has the power to sue in his own name. *See e.g., Betar v. DeHavilland Aircraft of Canada, Ltd.,* 603 F.2d at 35; *Messer v. American Gems,* 612 F.2d at 1374–75. These decisions are premised upon the need to assure that the federal courts consider only those "cases that 'really and substantially' involve a dispute within the jurisdiction of the federal courts" by assuring that the federal courts do not assume jurisdiction when the dispute is local, rather than interstate, in character. *Betar,* 603 F.2d at 351; *Bishop v. Hendricks,* 495 F.2d 289, 294 (4th Cir.) *cert. denied,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974); *O'Brien v. AVCO Corp.,* 425 F.2d at 1032. Finally, several courts have noted that no meaningful distinction exists between an assignment of a claim to a disinterested party for the purpose of creating diversity of citizenship and the appointment of a disinterested fiduciary to create diversity of citizenship; in either event, the party has attempted to create diversity of citizenship merely by complying with the formalities of state law. *E.g. McSparran v. Weist,* 402 F.2d at 874; *O'Brien v. AVCO Corp.,* 425 F.2d at 1036. *Cf. Kramer v. Caribbean Mills,* 394 U.S. at 828–29, 89 S.Ct. at 1490 (creation of diversity of citizenship by assignment is a "manufacture of jurisdiction" and thus, "improperly or collusively made"). Thus, these courts have concluded that a "party ... has been improperly or collusively made or joined ..." 28 U.S.C. Sec. 1359, when the primary aim of the transaction or appoint-

---

**4.** 28 U.S.C. Sec. 1359 provides:
 A district court shall not have jurisdiction of a civil action in which any party, by assign-

ment or otherwise, has been improperly or conclusively made or joined to invoke the jurisdiction of such court.

ment is to manufacture federal jurisdiction.[5]

We believe that these principles, which limit the ability of a guardian or administrator to rely upon his citizenship for purposes of diversity jurisdiction, apply with equal force in this instance.[6] The plaintiff is the corporate counterpart of an administrator; he has been appointed to represent a defunct corporation and he is responsible for liquidating the remaining assets of the dissolved corporation.[7] Moreover, the appointment of a receiver, like the appointment of an administrator, often results from the unilateral acts of the party contemplating litigation; the appointment proceeding is rarely adversary in nature and, in most circumstances, the choice put forward by the party contemplating litigation is likely to be accepted by the appointing authority. Thus, in either instance, the potential for abuse of the federal forum is substantial. In short, we believe that the principles developed by the Courts of Appeal under Sec. 1359 for determining whether an administrator has been appointed for the purpose of manufacturing diversity jurisdiction are equally important in the present context: a person may not obtain the appointment of a receiver for the purpose of creating diversity of citizenship anymore than he may obtain the appointment of an administrator to create diversity of citizenship. In either event, the manufacture of jurisdiction is collusive and improper within the meaning of Sec. 1359, and, thus, the citizenship of the representative may not be relied upon to establish diversity of citizenship.

In the context of Sec. 1359, the plaintiff must show that the primary purpose for the appointment of the fiduciary is not to manufacture diversity of citizenship. *E.g. McSparran v. Weist,* 402 F.2d at 875–76 (purpose conceded); *Bass v. Texas Power & Light Co.,* 432 F.2d at 766. We emphasize, however, that the subjective purpose of the party procuring the appointment is not the sole factor in this inquiry.[8] *E.g. Betar v. DeHavilland Aircraft of Canada, Ltd.,* 603 F.2d at 35; *Lester v. McFaddon,* 415 F.2d 1101, 1106 n. 11 (3rd Cir.1969). In the course of such an inquiry, several factors may be material: the court should con-

---

**5.** *See* text accompanying note 8, *infra.*

**6.** Although we conclude that a representative appointed to create diversity may not rely upon his citizenship to create diversity, this conclusion in no way affects the vitality of this court's holding in *Deposit Guaranty Bank & Trust v. Burton, supra.* In *Burton,* this court concluded that 28 U.S.C. Sec. 1332 permits an administrator who is the real party in interest to rely upon his own citizenship to establish diversity of citizenship. We continue to adhere to that view. We believe that this principle is limited, however, in those situations where the purpose of the appointment is challenged under Sec. 1359, a question which was not addressed by the panel in *Burton.*

**7.** Section 279 of the Delaware Corporation Code provides:

When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor or stockholder of the corporation, or on application of any one, who, in the Court's discretion, shows good cause therefor, at any time, may either appoint one or more of the directors of the corporation to be trustees, or appoint one or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.

**8.** The subjective intent of the party seeking the appointment, when it is the sole justification for the appointment, may be dispositive. *E.g. McSparran v. Weist,* 402 F.2d at 876; *Bass v. Texas Power & Light Co.,* 432 F.2d at 766. If, however, the appointment is the result of the confluence of several factors, including a subjective purpose to create diversity of citizenship, then the factfinder must weigh all of the factors to determine whether the *primary* purpose for the appointment was to create diversity of citizenship. *See Hackney v. Newman Memorial Hospital,* 621 F.2d at 1071 (subjective purpose not dispositive when independent valid reason exists for appointment).

sider, among other things, whether the fiduciary has duties other than prosecuting the lawsuit, *Messer v. American Gems,* 612 F.2d at 137; whether the fiduciary is the "natural" representative, *Groh v. Brooks,* 421 F.2d at 589, 595 (3rd Cir.1970); whether the appointment was in fact motivated by a desire to create diversity jurisdiction, *Bass v. Texas Power & Light,* 432 F.2d 763, 766 (5th Cir.1970); and whether the suit is local in character,[9] *Groh v. Brooks,* 421 F.2d at 595; *Trager v. New Rochelle Hospital Medical Center,* 453 F.Supp. 516, 520 (S.D. N.Y.1978).

We believe that the plaintiff was not improperly appointed and, consequently, that he may rely upon his citizenship to establish diversity. Unlike most cases, the purpose for the plaintiff's appointment is clear: if the plaintiff, or another resident of Delaware, had not been appointed as receiver, this cause of action could not have been brought in any federal or state court. Under Delaware law, a corporation which has been dissolved for more than three years may sue only if a receiver is appointed to act on behalf of the corporation. *See* Delaware Code, tit. 8, Sec. 279. A receiver appointed pursuant to Sec. 279 must be a resident of Delaware. Del.Ch.R. 150. Thus, if a suit is to be brought at all, it must be prosecuted by a resident of Delaware. Because of these considerations, we are convinced that the primary purpose for the plaintiff's appointment was not the desire to manufacture diversity jurisdiction.[10] Therefore, we conclude that diversity of citizenship exists between the Delaware plaintiff and the Kentucky defendants and that the district court had subject matter jurisdiction.

The district court dismissed the complaint for failure to state a claim because the action was not commenced within two years of the date of dissolution. *See Ky.Rev. Stat.,* 271A.515.[11] Essentially, the district court treated Sec. 271A.515 as a statute of

---

**9.** This factor is directly related to the policies underpinning jurisdiction based on diversity of citizenship. *Betar v. DeHavilland Aircraft of Canada,* 603 F.2d at 35 ("The purpose of diversity jurisdiction is to prevent local prejudice ...."). Thus, courts should ascertain whether a party has attempted to transform a "local" dispute into an interstate dispute by obtaining the appointment of a representative with diverse citizenship.

**10.** The Fourth Circuit has concluded that an administrator may not rely upon his citizenship to establish diversity jurisdiction when his appointment is required by the law of the forum state as a prerequisite to bringing an action in the forum. *E.g., Vaughn v. Southern Rwy. Co.,* 542 F.2d 641, 645–46 (4th Cir.1972).

The Fourth Circuit approach effectively abandons any notion that the purpose for the appointment is an important factor under Sec. 1359. *Vaughn v. Southern Rwy. Co.,* 542 F.2d at 644. We are unwilling to extend Sec. 1359 so far. The unmistakable language of Sec. 1359 indicates that a district court shall not have jurisdiction when a party "has been improperly or collusively made or joined *to invoke the jurisdiction of such court.*" (emphasis added). The last seven words indicate the type of manufacture or joinder that the statute governs: joinder or manufacture for the purpose of invoking the court's jurisdiction. We are unwilling to depart from the plain language of the statute and we cannot conclude that an appointment of a receiver made for the purpose of satisfying a condition precedent to the maintenance of this action in any forum is within the scope of Sec. 1359, and, therefore, we agree with Judge Butzner's dissent in that case.

**11.** Ky.Rev.Stat. Sec. 271A.515 provides:

The dissolution of a corporation either (1) by the issuance of a certificate of dissolution by the secretary of state, or (2) by a decree of court when the court has not liquidated the assets and business of the corporation as provided in this chapter, or (3) by expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. If such corporation was dissolved by the expiration of its period of duration, such corporation may amend its articles of incorporation at any time during such period of two years so as to extend its period of duration.

limitation [12] and concluded that, regardless of the plaintiff's status under Delaware law, this action could not be maintained under Kentucky law. On appeal the defendants vigorously pursue this point; they assert that 271A.515 is a statute of limitations and that the statute bars the commencement of any action more than two years after the corporation was dissolved. Because Hougland Barge Lines was dissolved in March, 1977, the defendants reason that this action, which was commenced in May, 1981, is barred by the two year statute of limitation.

Clearly, the plaintiff can properly proceed in the district court unless KRS Sec. 271A.515 bars this action. The plaintiff's capacity to bring this action is governed by Fed.R.Civ.P. 17(b). Rule 17(b) indicates that the capacity of a party suing as a representative, such as a receiver appointed by a state court, shall be determined by the law of the forum state. *Cohen v. LaVin*, 210 F.2d 550, 552 (2nd Cir. 1954). Kentucky law has long permitted a foreign receiver, who is properly appointed by courts of another state to represent a foreign corporation, to maintain an action in the courts of Kentucky. *Hallam v. Ashford*, 70 S.W. 197 (Ky.1902). Moreover, the question whether an action has abated because of the dissolution of a corporation is controlled by the law of the state of incorporation. *Oklahoma Natural Gas Company v. Oklahoma*, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1926); *United States v. Line Material Co.*, 202 F.2d 929, 931 (6th Cir.1953). Thus, if Delaware law continues the existence of the corporate entity for purposes of litigation, then the action has not abated, and the plaintiff may pursue the litigation on behalf of the corporation. *Id.* Delaware law generally continues the corporate existence for a period of three years after dissolution, Del.Code tit. 8, Sec. 278. After the expiration of the three year period, the corporate entity may be revived by appointing a receiver, and the corporation may, after appointment of a receiver, prosecute and defend lawsuits. Del.Code tit. 8, Sec. 279; *Johnson v. Helicopter & Airplane Services Corp.*, 404 F.Supp. 726, 732 (D.Md.1975); *Ross v. Venezuelan-American Independent Oil Prod. Ass'n.*, 230 F.Supp. 701, 703 (D.Del.1964). Because the plaintiff was appointed receiver under Sec. 279 for the purpose of bringing this suit, we believe that the corporate existence continues for the purpose of bringing this suit. Thus, this suit can properly be maintained, unless Ky.Rev.Stat. Sec. 271A.515 in some way limits the plaintiff's ability to prosecute this action.

We believe that Ky.Rev.Stat. Sec. 271A.515 does not affect the plaintiff's ability to bring this action in district court because it applies only to claims which arise *prior* to dissolution. The operative language of Sec. 271A.515 indicates that "the dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, *for any right or claim existing, or any liability incurred, prior to such dissolution* if action or other proceedings thereon is commenced within two years after the date of dissolution ...." (emphasis added). The italicized language clearly and unambiguously indicates that the limitation period is imposed only with regard to claims existing prior to dissolution.[13] The claim being asserted in

---

12. Section 271A.515 is modeled after Sec. 105 of the Model Business Corporation Act. Although Sec. 105 has been treated as providing for the survival of a corporation's remedies for two years after dissolution, *see* Fletcher, Cyclopedia of Corporations, Sec. 9139, the Courts of Kentucky, appear to have treated Kentucky's version of Sec. 105 (Sec. 271A.515) as a statute of limitations. *See Leiserson & Adler Inc. v. Keam*, 266 S.W.2d 352, 356 (Ky.1954) (treating predecessor of Sec. 271A.515 as a limitation on an entity's ability to enforce a cause of action).

Because we conclude that Sec. 271A.515 does not, by its terms, apply to the cause of action asserted here, we need not decide whether the statute is a true statute of limitations, or whether it merely permits the survival of remedies of dissolved Kentucky corporations. Similarly, we need not consider the full faith and credit arguments advanced by the plaintiff.

13. Neither the parties, nor our research, have disclosed the existence of any cases applying Sec. 271A.515 to bar a claim which arose after dissolution and which was not prosecuted until

this action did not arise prior to dissolution; in fact, the cause of action asserted here could not have accrued until after dissolution and the winding-up period.[14] We believe that Sec. 271A.515 does not affect the plaintiff's ability to prosecute this action and, consequently, that the district court's decision dismissing this action must be reversed.

Accordingly, the judgment of the district court is reversed, and this matter is remanded for proceedings not inconsistent with this opinion.

after two years from the date of dissolution. Consequently, we treat this issue as a matter of first impression in the State of Kentucky, and we must apply "the statute in a manner consonant with the literal meaning of its terms...." *Shircliff v. Elliott,* 384 F.2d 947, 950 (6th Cir. 1967).

14. The corporation was dissolved on March 1, 1977. The IRS assessment was issued on February 23, 1979. The additional taxes and penalties were paid on March 14, 1980. Thus, the cause of action could not have arisen, at the earliest, until February, 1979, nearly two years after dissolution.

If the cause of action is assumed to have accrued in March, 1980, when the question of further tax liability was finally settled, then our interpretation of Sec. 271A.515 avoids the anomaly of a limitation period expiring prior to the accrual of the cause of action. *See Commonwealth Dep't of Transportation v. All Points Construction Company,* 566 S.W.2d 171, 173 (Ky.App.1978) ("Far from doing violence to legislative design, this approach avoids imputing to the legislature the illogical intent to cut off a right of action before it accrues").