NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE–SPECIAL CONTRIBUTION FUND, Plaintiff,

v.

Nathaniel R. JONES, Defendant.

No. C89–1130.

United States District Court, N.D. Ohio, E.D.

March 7, 1990.

William T. Session, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for plaintiff.

Thomas D. Barr and Rowan D. Wilson, Cravath, Swine & Moore, New York City, Kathleen McDonald, Porter, Wright, Morris & Arthur, Cleveland, Ohio, Robert S. Brown and Nancy Greiwe, Brown, Cummins & Brown and Stephanie J. Jones, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

BATTISTI, District Judge.

This case, originally brought as a case against four defendants,[1] commenced in Kansas City, Missouri over three years ago. Plaintiff National Association for the Advancement of Colored People–Special Contribution Fund ("SCF") seeks restitution from SCF's former staff attorneys of attorneys' fees awarded primarily in pending school desegregation suits. After the claim against Defendant Nathaniel R. Jones ("Jones")[2] was severed and transferred to this Court, Jones has renewed Motions to Dismiss under Fed.R.Civ.P. 12(b)(1), 4(j), and 12(b)(3). SCF has renewed Motions to Substitute Party Plaintiff and for Leave to File a Second Amended Complaint. Fed.R.Civ.P. 17(a), 15(a). For the reasons that follow, Jones' Motions are GRANTED, SCF's Motions are DENIED, and this case is DISMISSED.

The ample and voluminous procedural background of this case will be summarized briefly. Plaintiff SCF filed a Complaint against four Defendants in Kansas City, Missouri on February 24, 1987, and an Amended Complaint on March 10, 1987. Jones subsequently received by mail a Summons and Complaint on March 5, 1987 and a Summons and Amended Complaint on April 6, 1987. Renewed Motion of Nathaniel R. Jones to Dismiss Complaint, Appendix B ("Renewed Mem.App. B") [Jones Affidavit, ¶ 7]. On the advice of counsel, Jones did not sign or return both Acknowledgements of Receipt of Summons and Complaint. *Id.* In his Motion to Dismiss, filed April 29, 1987, Jones raised a litany of Rule 12(b) defenses—the more pertinent being lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and insufficiency of service of process.[3] In recognizing the absence of *in personam* jurisdiction over all Defendants—Judge Sachs hypothesized, that as to venue, the case seemed to have been filed in Kansas City "because it is 'centrally located' (defendants reside in California, Florida, Ohio and New York) and plaintiff's counsel resides in Kansas City." Memorandum and Order of October 13, 1988 at 1. Following his approach in *Cunningham v. Subaru of America, Inc.*, 620 F.Supp. 646, 647–48, (W.D.Mo.1985) (Essentially unrelated activities of nonresident Defendant in Missouri do not authorize use of the Missouri long-arm statute), and thus avoiding the inherent constitutional due process issue, Judge Sachs stated that he was "prepared to dismiss or transfer this litigation" but offered SCF "an opportunity to be heard as to its preference." Order of Oct. 13, 1988 at 3. On November 10, 1988, SCF moved to have the case severed into four cases and trans-

---

1. The original case was styled, *National Association for the Advancement of Colored People–Special Contribution Fund v. Thomas I. Atkins, Nathaniel R. Jones, Teresa Demchak and William H. Wells,* Case No. 87–0156–CV–W–6 (W.D.Mo.) (Sachs, J.).

2. Defendant Nathaniel R. Jones, Esq. has served as a Judge on the United States Court of Appeals for the Sixth Circuit since 1979. Prior to this office, from 1969–79, Defendant served as General Counsel for both the National Association for the Advancement of Colored People and the National Association for the Advancement of Colored People—Special Contribution Fund.

*See* Renewed Motion of Nathaniel R. Jones to Dismiss Complaint, Appendix B ("Renewed Mem., App. B") [Jones Affidavit] ¶ 2. Adopting the practice of the parties in this litigation, and in the interest of brevity, this Order refers to Defendant as "Jones."

3. Jones also raised the defenses of insufficiency of process and failure to state a claim upon which relief can be granted. He also moved for Rule 11 Sanctions. After the district court denied these motions without prejudice on January 13, 1988, Jones renewed all his previous Motions on July 6, 1988.

ferred;[4] SCF requested that the Jones portion be transferred to "the United States District Court for the Northern District of Ohio, Eastern Division." Renewed Mem., App. K [Memorandum in Support of Plaintiff's Motion to Sever and Transfer at 2][5]. After Judge Sachs gave all parties another opportunity to give their preference to his proposed decision to sever and transfer— Order of March 14, 1989, and no further responses were forthcoming, the May 15, 1989 Order severed and transferred the Jones portion of the original case to the Northern District of Ohio.

After being assigned its present docket number, the case *sub judice* remained dormant for over five months, until this Court's *sua sponte* Order of October 31, 1989 directed the parties to file a joint status report. *See* Reply Memorandum in Support of Jones' Renewed Motion to Dismiss ("Reply Mem.") at 1 n. 1. On November 24, 1989, the parties seasonably filed a joint status report, identified the pertinent pending issues, and established a briefing schedule. In light of the potentially dispositive issues, and to afford the parties the fullest opportunity to be heard and to present relevant evidence, the Court scheduled an evidentiary hearing on these motions. After careful consideration of the briefs, exhibits, affidavits, and oral argument advanced at the hearing on February 14, 1990, the Court addresses the following motions.

4. The Order of March 14, 1989 dismissed without prejudice the case against Defendant Atkins.

5. Specifically, SCF argued that "to remove the procedural obstacle that impedes a just, expeditious and orderly adjudication of this case on the merits," that is, the lack of personal jurisdiction, SCF "requests that this Court sever and transfer its case against defendant Jones to the United States District Court for the Northern District of Ohio, Eastern Division (hereinafter 'Ohio court'), where venue, jurisdiction and process over Jones will be uncontrovertible." Renewed Mem., App. K, at 2–3.

6. Although ¶ 3 of the Amended Complaint alleges subject matter jurisdiction arises under a federal question, 28 U.S.C. § 1331, SCF has conceded in its briefing since 1987 that no federal cause of action is claimed and that this allegation was "inadvertently retained." Renewed

## A. Subject Matter Jurisdiction

In both its pleadings and briefing, SCF asserts subject matter jurisdiction arises solely under the diversity statute, 28 U.S.C. § 1332.[6] SCF alleges that Jones is a "citizen" of the state of Ohio and that SCF is an "unincorporated association which is a organized under the laws of New York." Complaint and Amended Complaint, ¶¶ 5, 7. Pursuant to Rule 12(b)(1), Jones has seasonably, repeatedly, and properly addressed the longstanding rule that SCF, as an unincorporated association, is a "citizen" under § 1332 of all the states in which its members are citizens. *Navarro Savings Association v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *United Steel Workers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *SHR Limited Partnership v. Braun*, 888 F.2d 455, 459 (6th Cir.1989); *Jaser v. New York Property Ins. Underwriting Association*, 815 F.2d 240, 242 (2d Cir.1987) ("The citizenship of an unincorporated association for diversity purposes has been determined for nearly 100 years by the citizenship of each and every member of that association."); *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93 (4th Cir.1983).

Since federal courts are courts of limited, rather than general jurisdiction— *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983), *cert. denied*, 465 U.S. 1025,

Mem., App. F [Plaintiff's Suggestions in Opposition to Defendants' Motions to Dismiss, at 2, filed June 8, 1987]. SCF does not advance a § 1331 theory in the Proposed Second Amended Complaint. Of course, the mere invocation of § 1331, without more, is meaningless and does not in itself confer federal question jurisdiction. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Reid v. Hughes*, 578 F.2d 634, 637 (5th Cir.1978); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3564, at 68–75 (2d ed. 1984).

It is also the general rule, that when subject matter jurisdiction is attacked, a federal court should address this argument first. *Bell v. Hood*, 327 U.S. at 682, 66 S.Ct. at 776, 90 L.Ed. at 943; *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983) (Celebreeze, J.), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 548 (1969).

104 S.Ct. 1281, 79 L.Ed.2d 684 (1984), the party invoking federal jurisdiction bears the burden of affirmatively pleading and proving subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Randazzo v. Eagle–Picher Industries, Inc.,* 117 F.R.D. 557, 559 (E.D.Pa.1987) (Lord, J.) ("To rebut the presumption that a federal court lacks jurisdiction over a particular case the facts that establish jurisdiction must be affirmatively alleged." (citing *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 339, 70 L.Ed. 682 (1926)); Fed.R.Civ.P. 8(a)(1). An unincorporated association, as the party invoking federal jurisdiction, bears this burden. *Chapman v. Barney,* 129 U.S. 677, 681–82, 9 S.Ct. 426, 427–28, 32 L.Ed. 800 (1889); *Queen Victoria Corp. v. Insurance Specialists of Hawaii, Inc.,* 711 F.Supp. 553, 554 (D.Ha.1989) (removal). A Court may examine materials outside the Complaint to determine whether subject matter jurisdiction exists. *Land v. Dollar,* 330 U.S. 731, 735 N. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947). Once jurisdiction is challenged, the party invoking federal jurisdiction must support the jurisdictional allegations with "competent proof" and show "by a preponderence of evidence" that jurisdiction exists. *McNutt, supra,* 298 U.S. at 189, 56 S.Ct. at 785, 80 L.Ed. at 1141; *Accord, Dweck v. Japan CBM Corp.,* 877 F.2d 790, 792 (9th Cir. 1989).

Since Chief Justice Marshall's opinion in *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), the Supreme Court has interpreted the diversity statute as requiring complete diversity. *See Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978). Since Jones is a citizen of Ohio, none of SCF's members, at the time the Complaint was filed—*Field v. Volkswagenwerk, Inc. AG,* 626 F.2d 293 (3d Cir.1980) (citing *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1., 1

L.Ed.2d 1205 (1957))—may be citizens of Ohio. *Navarro, supra,* 446 U.S. at 461, 100 S.Ct. at 1782, 64 L.Ed.2d at 430.

SCF has submitted only its Constitution and By-laws—SCF Memorandum in Opposition to Defendant's Motion to Dismiss ("SCF Mem. in Opp., Exh. A")—which disclose the purposes and organizational structure of SCF. However, this exhibit, upon careful scrutiny, does not affirmatively establish the citizenship of the members of SCF. Although Article III mentions a Board of Trustees of 30–39 members, and Article IV mentions Officers, there are no affirmative allegations and proof of the "citizenship" of these persons and any other members. Because SCF has not shown by a preponderance of evidence that none of its members are citizens of Ohio, there is no proof of complete diversity and this court must dismiss for lack of subject matter jurisdiction. *McNutt, supra,* 298 U.S. at 189, 56 S.Ct. at 785, 80 L.Ed. at 1141.[7]

## B. Substitute Party Plaintiff

In implicitly acknowledging this fatal defect, SCF argues, contrary to its Complaint and Amended Complaint, that SCF is "not an unincorporated association, but instead is simply an *operating unit* of the National Association for the Advancement of Colored People, Incorporated," ("NAACP, Inc."), and "does not possess a *legal* identity separate and distinct" from the NAACP, Inc. SCF Mem. in Opp. at 7. (Emphasis in original). The term "operating unit", SCF argues, means "an economic fund within the accounting and operational structure of the NAACP, Inc. having been created for certain restricted and limited purposes including sponsorship of civil rights litigation." *Id.* As support, SCF attaches its Constitution and By-laws. SCF Mem. in Opp., Exh. A. Thus, SCF argues, the error is one of nomenclature because the party plaintiff should have been denominated the NAACP, Inc., a not-for-profit corporation organized under the laws of New York

---

**7.** A court of limited jurisdiction not only errs in considering a case outside its jurisdiction, but also commits "an unconstitutional invasion of the powers reserved to the states." *Randazzo v.*

*Eagle–Picher Industries, Inc.,* 117 F.R.D. 557, 559 (quoting 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3522 at 61 (2d ed. 1984)).

with its principal place of business in Baltimore, Maryland. *See* Renewed Mem., App. G [Proposed Second Amended Complaint, ¶ 5, leave filed June 19, 1987]. SCF thus requests substitution of the NAACP, Inc. as Party Plaintiff under Rule 17(a).

Jones argues that SCF, as an unincorporated association, brought this lawsuit and "inexplicably" continues to bring lawsuits as a legal entity, and attaches a copy of one such suit as an Exhibit. Reply Mem., at 6 & App. B—Verified Complaint: *National Association for the Advancement of Colored People Inc. and National Association for the Advancement of Colored People—Special Contribution Fund v. Thomas I. Atkins,* ("Atkins II") Supreme Court of New York, Kings County (filed October 17, 1989). In Atkins II, which asserts nearly identical claims against Atkins as the claims originally asserted against him before severance and transfer of this case, the Complaint alleges that "Plaintiff, National Association for the Advancement of Colored People–Special Contribution Fund (hereinafter referred to as the Fund), is a legal entity with the capacity to sue and be sued in New York State." *Id.*, at ¶ 2. SCF has not challenged Jones' Exhibit, nor rebutted the force of this admission in any briefing or at oral argument. Indeed, when invited by the Court, it declined argument—it squatted. Trans. of Pro., February 14, 1990 at 8.

■ SCF concedes that it has certain characteristics—such as a "separate management or administrative structure apart from the remaining programs and activities of the NAACP, Inc." SCF Mem. in Opp. at 7. An examination of SCF's Constitution and By–Laws reveals that SCF has attributes of a legal entity or juridical person, entitled to sue or be sued.[8]

Although the NAACP Board of Directors fill vacancies in the Board of Trustees and ratifies amendments to the SCF Constitution and By-laws (Articles IX, XIII–XIV), the majority of provisions show autonomy. SCF has its own name (Article I); Purpose—*inter alia,* "to defend human and civil rights of citizens of the United States" (Article II); Management and Governance: a Board of Trustees, Officers, and Executive Committee (Articles III–IV, VII); regularly scheduled meetings (Article VIII); bank accounts, books, and accounting records (Articles V, X). The Board of Trustees may indemnify its Trustees and Officers of SCF (Article XII), amend the Constitution and promulgate additional By-laws, (Articles XIII–XIV), and fill vacancies for unexpired terms of Officers (Article VI). Upon dissolution, SCF's assets are to be used for SCF's purposes and may be distributed to a tax exempt charitable organization with similar purposes and activities (Article XI).

No provision in the SCF Constitution expressly states that it is an operating unit of the NAACP, Inc. There is also the inescapable fact that SCF has filed lawsuits in its own name, as a legal entity. This fact establishes a strong presumption that SCF considers itself to be a legal entity or person in the law and is thus a real party. Since SCF has held itself out as a legal entity, when it is convenient to do so, equitable considerations of estoppel are present. Under New York law and Ohio law—the law of the forum in this diversity case—an unincorporated association is a legal entity capable of suing or being sued. *See* Ohio Rev.Code Ann. § 1745.01 (an unincorporated association may sue or be sued).[9]

---

**8.** The Board of Trustees has 30–39 Members, who "may or may not be Directors of the NAACP." Article III, §§ 2–3. Trustees may, through Officers of SCF or "other persons expressly designated by the Board of Trustees, assign, mortgage, pledge, hypothecate or otherwise encumber assets of the Special Contribution Fund in order to borrow monies of for the Fund." Article III, § 1.

**9.** Since venue was improper in Missouri (SCF requested, pursuant to 28 U.S.C. § 1406(a) that

this case be transferred to the Northern District of Ohio, the law of Ohio controls. It is settled that when personal jurisdiction does not exist, even if venue were proper, that the transferee court applies the law of the transferee forum. *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1108 (5th Cir.1981); *Carson v. U–Haul Co.,* 434 F.2d 916 (6th Cir.1970); 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure,* § 3846 at 366 & nn. 25–26 (2d ed. 1986).

Based upon the evidence and arguments received, the Court determines that SCF is a legal entity that may sue or be sued. Thus, the Motion to Substitute Party Plaintiff is DENIED.

### C. Leave to Amend Complaint

■ Although SCF has requested leave to amend the Complaint, the Court has no authority to allow SCF to amend the Complaint to substitute another party, the NAACP, Inc. as the Plaintiff. Since complete diversity and thus, subject matter jurisdiction has never existed, the Court lacks the power to allow substitution of a diverse Plaintiff as a surrogate for the non-diverse original Plaintiff. Several Circuits have confronted this situation and denied amendment. *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *Field v. Volkswagenwerk AG,* 626 F.2d 293, 306 (3d Cir.1980) (Adams, J.) (Appellants attempt "not simply to amend a defective allegation of jurisdiction, but rather effectively to change the citizenship of the estate's representative by substituting a diverse party for a non-diverse one."); *Aetna Casualty and Surety Co. v. Hillman,* 796 F.2d 770, 774 (5th Cir.1986) (Because "Aetna [the Plaintiff] did not have the ability to bring suit in federal court it could not amend" to substitute a new plaintiff.). Second, even if the Court could grant leave, the Proposed Second Amended Complaint, on its face, lacks complete diversity, and granting leave would be futile.[10]

### D. Failure to Timely Perfect Service of Process

■ As an alternative ground for dismissal, Jones argues that he has not been properly served within 120 days required under Rule 4(j). As amended in 1983, Rule 4(j) mandates dismissal of an action if service is not perfected within 120 days unless good cause is shown. *United States v. Gluklick,* 801 F.2d 834, 837 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). In the case *sub judice,* SCF made two attempts to serve Jones with process by mail pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii).[11] On the advice of counsel, Jones did not sign or return the Acknowledgement of Receipt and Summons for the Complaint or the Amended Complaint within the twenty days required by Rule 4(c)(2)(C)(ii). The Sixth Circuit has held that defendant's failure to acknowledge service renders service invalid, and requires the plaintiff to personally serve the Defendant. *Gluklick, supra,* at 836 (citing *Norlock v. City of Garland,* 768 F.2d 654, 657 (5th Cir.1985)). SCF concedes that service was rendered ineffective by Jones' refusal to sign and return the Acknowledgement of Receipt and Summons. In this event, a plaintiff must make personal service under Rules 4(d)(1) or (d)(3). An obstructing defendant may be liable for the costs of such personal service under Rule 4(c)(2)(D). SCF has made no attempt at personal service of process in three years.

As its only explanation of good cause, SCF argues that Jones' original motions and SCF's responses and Motions were pending, unresolved, before Judge Sachs for over two years, from April 29, 1987 until May 15, 1989. No explanation is offered for the failure to do anything since the transfer to this court. As Appendix A of his Reply Memorandum, Jones has attached a copy of *NAACP–SCF v. Demchak,* C89–2025–DLJ, —— WL —— (N.D. Cal. January 11, 1990), where Judge Jensen, hearing the same arguments as to former co-defendant Demchak, decided that

---

10. In the Proposed Amended Complaint, both the NAACP, Inc. and Atkins are "citizens" of New York. Renewed Mem., App. G, ¶¶ 5–6. Recognizing this difficulty, SCF sought jurisdiction over Atkins on the theory of pendent-party jurisdiction. Judge Sachs, while declining to rule on the matter, stated that "it is very unlikely that pendent-party jurisdiction will successfully keep Mr. Atkins in this case, as a matter of federal diversity citizenship law. *Owen Equip-*

*ment & Erection Co. v. Kroger,* 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978)." Order of October 13, 1988, at 2 n. 1.

11. Jones states that the service was mailed to him at the Courthouse in Cleveland. Jones address on the Complaint is listed as *U.S. Court-house, Room 210, Cleveland, Ohio 44114.*

the pendency of motions was not good cause:

This fact does not demonstrate good cause for delay in service; rather, the motion to dismiss gave notice to plaintiff of the defect in service within the 120-day period following filing of the Amended Complaint on March 10, 1987. Therefore, the fact that the motion was pending should have prompted plaintiff to cure the defect, not to wait an indefinite time for a ruling on its merits. Failure to make timely service due to a misunderstanding of the requirements of Rule 4(c)(2)(C)(ii) does not constitute good cause justifying delay. *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 844 (3d Cir.1987).

SCF has had both an opportunity to be heard, and almost three years to perfect service; nonetheless, it has made no effort since April 1987 to properly serve Jones. Although the federal rules should be construed liberally, "liberal construction cannot override the Rule's plain requirements." *Demchak*, slip op. at 5 (quoting *Guth v. Andersen*, 118 F.R.D. 502, 504 (N.D.Cal.1988)). Judge Jensen's reasoning is persuasive. It provides an alternative basis for dismissal.

*E. Venue*

■ Finally, as another alternative ground for dismissal, Jones argues that venue is improper, since he resides in the Southern District of Ohio, not the Northern District of Ohio. As stated earlier in this Order, SCF moved, pursuant to 28 U.S.C. § 1406, for transfer to "the Northern District of Ohio," the "district wherein defendant resides." Renewed Mem., App. K [Memorandum in Support of Plaintiff's Motion to Sever and Transfer, at 2, 10, filed November 10, 1988]. At the evidentiary hearing, Jones' counsel introduced into evidence, without objection, an Affidavit of

Nathaniel R. Jones ("Jones Aff.") dated April 27, 1987 in which Jones stated that he has "resided in Cincinnati, Ohio since 1979." February 14, 1990 Hearing, Defendant's Exhibit 1, ¶ 1. This Affidavit is the same one that Jones attached to his original Motion to Dismiss, filed April 29, 1987. Renewed Mem., App. B [Jones Aff.]. SCF had actual notice of Jones' residence a year and a half before SCF filed its Motion to Sever and Transfer this case in November, 1988. It is no secret that Congress divided Ohio into two judicial districts—28 U.S.C. § 115,[12] and that Cincinnati, located in Hamilton County (Jones Aff.) lies in the Southern District of Ohio. SCF has neither responded to this motion nor explained its conduct.

■ The relevant statute, 28 U.S.C. § 1406(a) states that when venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case" to a district which it could have been brought. However, when subject matter jurisdiction is lacking, a Court must dismiss the action. *See Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 n. 6 (2d Cir.1978); 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure*, § 3827 at 262 (2d ed. 1986). Momentarily turning a deaf ear to the legal niceties of subject matter jurisdiction, dismissal would still be warranted, under these facts, because another transfer would not serve the interest of justice. Although Judge Sachs generously offered SCF several bites at the apple, SCF ignored the Jones' Affidavit. If, as SCF claims, it wishes to litigate this case on the merits, it would hardly be in the interest of justice, to force yet another federal district court, with these pleadings, to undergo a similar exercise in futility.

*F. Conclusion*

Although Jones has not renewed the Motion for Rule 11 sanctions,[13] at the eviden-

---

**12.** The Act of February 10, 1855, ch. 73, 10 Stat. 604 divided Ohio into two federal districts. *See History of the Sixth Circuit: A Bicentennial Project,* p. 36 (1976).

**13.** In denying Jones' renewed request for Rule 11 sanctions in his October 13, 1988, Order, Judge Sachs wrote:

While Plaintiff has made some procedural missteps it is not clear that they have been harmful to defendants. Realistically it might have been thought that the defendants would

tiary hearing, Jones' counsel closed his argument with an unrebutted explanation of the origin of this lawsuit:

> What I believe, and what I can, and what I believe I must say to this Court is that the defects in the pleading are so obvious that Plaintiff has persisted in the face of certain knowledge that the venue was wrong, and that the service of process was just not any good. That it seems very clear on the plain records of the case without any gloss that plaintiff has not proceeded in good faith. This lawsuit is and has always been a harassment. It was filed and is pursued for that reason alone.
>
> That, your Honor, I submit is the inevitable conclusion that one must draw. And I submit that that has gone far enough and ought to come to an end today....

Trans. of Pro., Feb. 14, 1990, at 7–8.

In light of the severe, incurable, and multiplying infirmities in this case, it would seem to be a strong candidate for Rule 11 sanctions.

Because Jones' Renewed Motions are GRANTED and SCF's Renewed Motions are DENIED, this case must "come to an end today." Accordingly, this case is DISMISSED for lack of subject matter jurisdiction, and, for alternative reasons, DISMISSED for failure to perfect service of process and improper venue.

IT IS SO ORDERED.

wish to join forces in a single lawsuit on the question presented. Plaintiff has commendably been in the business of experimental litigation, seeking to test the outer limits of civil rights. While this litigation comes close to being irresponsibly filed in this district, I will indulge in generally permissive practice under the circumstances and deny the request for sanctions.

Several months later, in response to Jones' Motion to Reconsider this Order, Judge Sachs held:

> The Court continues to resist comment on the substantive merits which it is not called upon to decide, because it is not the correct forum. Some other court or courts may have occasion to review claims that the litigation is frivolous rather than pioneering in nature.... The choice of this district is defective for reasons previously stated, but I continue to believe that sanctions are not appropriate at this time. The motion for reconsideration of sanctions is therefore DENIED.

Although this case has not improved with age, this Court adopts the thoughtful analysis of Judge Sachs, and makes no determination as to sanctions at this time.