**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 1, 2014
Date Decided: July 30, 2014
Revised: August 8, 2014

Gregory E. Stuhlman
Greenberg Traurig, LLP
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Catherine G. Dearlove
Thomas A. Uebler
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Peter J. Walsh, Jr.
Matthew D. Stachel
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

Thad J. Bracegirdle
Wilks, Lukoff & Bracegirdle, LLC
1300 North Grant Avenue, Suite 100
Wilmington, DE 19806

Richard D. Heins
Ashby & Geddes
500 Delaware Avenue
Wilmington, DE 19801

Re: *In re Jenzabar, Inc. Derivative Litig.*,
Civil Action No. 4521-VCG

Dear Counsel:

This case raises an interesting question of the capacity of a trust as a juridical person, which trust, by the document that gave it life, has expired, but

where that trust still holds assets on behalf of its beneficiary. The question arises under Massachusetts law. This Letter Opinion addresses the Defendants' Motion to Dismiss, which is granted. For the reasons below, I find that the trust can take only those actions related to preserving its assets for purposes of distribution and wind-up, together with those actions for which the trust instrument specifically provides: the latter include defensive litigation, but not the maintenance of the derivative litigation contemplated in this action.

The question before me arises in the following context: On April 21, 2009, MCG Capital Corporation ("MCG") filed a Complaint in this action, alleging both direct and derivative claims against the software company Jenzabar, Inc. ("Jenzabar," or the "Company") and various directors and officers of the Company, including Robert A. Maginn, Jr., Ling Chai, Jamison Barr, Joseph San Miguel, and Daniel Quinn Mills. In May 2010, then-Chancellor Chandler dismissed most of MCG's derivative claims; the surviving derivative claims relate to a $750,000 bonus payment for Maginn, Jenzabar's CEO and Chairman, that was purportedly approved by the board in 2002, never paid, and then reapproved in December 2008 (the "2002 Bonus").[1] According to the Complaint, reapproval of this bonus reflected breaches of fiduciary duties by the Defendants. On October

---

[1] *See MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *3, *27 (Del. Ch. May 5, 2010). Then-Chancellor Chandler did, however, dismiss these claims as alleged against Defendant Chai.

19, 2010, MCG filed a second complaint against Jenzabar in a separate action, seeking an order requiring the Company to repurchase its preferred stock.

Those parties subsequently settled both matters, with Jenzabar repurchasing MCG's preferred stock.[2]  On March 1, 2012, they filed a Stipulation of Dismissal in this action, which dismissed MCG's direct claims and the Defendants' counterclaims.  On June 27, 2013, the parties filed a Joint Stipulation and Petition for Dismissal of Derivative Claims with Prejudice as to Named Plaintiff Only. Jenzabar then mailed a Notice of Stipulation and Petition for Dismissal of Derivative Claims "to all Jenzabar stockholders of record who held Jenzabar stock continuously from December 31, 2008, to June 26, 2013."[3]  This Notice notified Jenzabar stockholders of their right to seek to intervene, providing:

> Jenzabar's stockholders may seek leave of the Court to intervene in this action, subject to Defendants' right to oppose such motion.  Any Jenzabar stockholders seeking to pursue the Derivative Claims shall, by no later than 15 days before the Dismissal Hearing . . ., file a motion to intervene . . . .[4]

Only the Plaintiff here, trustee of a trust allegedly holding Jenzabar stock, came forward to continue what remains of this litigation; specifically, the derivative claims related to the 2002 Bonus.  Conversely, all other Jenzabar stockholders—

---

[2] As a result, MCG lost derivative standing to prosecute the remaining derivative claims in this matter.
[3] Aff. of Mailing ¶ 4.
[4] Transmittal Aff. of Gregory Stuhlman Ex. 1 at 4.

3

representing approximately 96 percent of the shares outstanding—remained content to see these claims lapse.

A. *Background*

In 2000, non-party Gregory Raiff established a grantor-retained annuity trust (a "GRAT"), governed by Massachusetts law, for which he was grantor and sole beneficiary. This trust, The Gregory M. Raiff 2000 Trust (the "Raiff Trust"), was established through a trust agreement dated May 23, 2000 (the "Trust Instrument"). The Raiff Trust was funded with shares of Jenzabar. As of July 2001, the Raiff Trust held 1,750,000 shares of Jenzabar common stock.[5] The Plaintiff avers that, "[a]s a result of a stock dividend in 2012 and stock repurchase by Jenzabar in 2005, the [Raiff] Trust presently owns approximately 16,391,000 shares of Jenzabar common stock."[6] At oral argument, counsel estimated that this ownership interest represents approximately four percent of the Company's holdings.[7] Jenzabar stock is the Raiff Trust's only asset.[8]

---

[5] Transmittal Aff. of Thomas Uebler Ex. B at 2-3. Although Jenzabar issued over 12,000 shares of subordinated preferred stock to the Raiff Trust, as reflected in a December 2004 stock certificate and March 2005 letter to the then-trustee, references to stock in this Letter Opinion refer to common stock unless otherwise noted. *See* Transmittal Aff. of Gregory Stuhlman Ex. 15.

[6] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 6 (emphasis omitted).

[7] Oral Arg. Tr. 45:21-46:2; *see also* Transmittal Aff. of Gregory Stuhlman Ex. 23 at 1 (noting that, in June 2012, the Raiff Trust's ownership percentage in Jenzabar was 4.27 percent on a non-fully diluted basis).

[8] *See*, *e.g.*, Jonathan Dep. 29:5-7 (responding to the question "do you know what assets are held by the [Raiff Trust]" with "I believe it's just the Jenzabar stock").

Massachusetts attorney M. Gordon Ehrlich served as trustee of the Raiff Trust from its inception until December 18, 2012.[9]  During this same period, Ehrlich also served as trustee of the Gregory M. Raiff Family Trust (the "Family Trust"), the Raiff Trust's contingent beneficiary.[10]  Gregory's brother, Jonathan Raiff, was appointed successor trustee of both Trusts in December 2012.[11]

As a GRAT, the Raiff Trust, by the terms of the Trust Instrument, was to make annuity payments to Gregory "[o]n each of the first two anniversaries of the date of creation of [the] Trust."[12]  Each of these payments was to equal 55.923 percent "of the initial fair market value of the property contributed to this trust."[13]  Further, in accordance with the following language, the Raiff Trust was to terminate on May 23, 2002:

> Termination. This Trust *will terminate* upon the earlier of the death of the Grantor and the second anniversary of the date the Trust is created.  If the Grantor is living at the termination of the Trust, the Trustee shall distribute the remaining principal to the Trustees for the time being of The Gregory M. Raiff Family Trust, heretofore created by the Grantor by instrument of even date herewith, and to be held and disposed of by the said Trustees upon the trusts therein set forth. If the Grantor is not then living, the Trustee shall distribute the remaining principal to the Grantor's estate.[14]

---

[9] Transmittal Aff. of Gregory Stuhlman Ex. 4 at RAIFF-000029.
[10] *Id.* at RAIFF-000030.
[11] *Id.* Ex. 5 at RAIFF-000381-82.  I use first names to distinguish between the Raiff brothers; no disrespect is intended.
[12] The Raiff Trust Trust Instrument § 2.
[13] *Id.*
[14] *Id.* at § 3 (emphasis added).

The Defendants contend that the two annuity payments called for would have almost certainly depleted the Raiff Trust, leaving nothing for the remainder beneficiary, the Family Trust;[15] the Plaintiff does not address this contention. Regardless, it appears from the record that no remainder principal was transferred from the Raiff Trust to the Family Trust.[16] In fact, the parties dispute whether the Raiff Trust ever made any distributions, including upon its termination in 2002.

The Defendants, arguing that the Raiff Trust distributed its assets to Gregory, emphasize the language of the Trust Instrument itself, as well as record evidence that such a distribution took place.[17] For instance, an email regarding a "limited tender offer" by the Company, sent in 2005 by Gregory's then-counsel to Jenzabar, stated:

> My client needs to know immediately whether Jenzabar is requiring all of the beneficiaries of the Raiff Family Trust, which trust is the contingent beneficiary of the Raiff Trust that owned the Jenzabar shares *until Raiff Trust terminated and distributed the Jenzabar shares to Greg*, to sign documents . . . .[18]

---

[15] *See, e.g.*, Defs.' Reply Br. in Supp. of Mot. to Dismiss at 5 n.5; *see also* Transmittal Aff. of Thomas Uebler Ex. E.

[16] *See, e.g.*, Ehrlich Aff. ¶ 4 (noting that he "do[es] not recall [the Raiff Trust] making any distribution to the Raiff Family Trust . . ."); Jonathan Dep. 29:8-10 (stating that he "believe[s] there are no assets" in the Family Trust).

[17] The Defendants make additional arguments relying on federal tax and Massachusetts trust law, and argue that, "[a]s a matter of law and equity, all that remains of the Trust is an empty, terminated shell with no assets and nothing left to do but wind up its (nonexistent) affairs." Defs.' Reply Br. in Supp. of Mot. to Dismiss at 1; *see also id.* at 6-7.

[18] Transmittal Aff. of Thomas Uebler Ex. F.

Conversely, the Plaintiff contends that "[t]he [Raiff] Trust has made no distributions to [Gregory] or the Raiff Family Trust or its beneficiaries,"[19] and that neither trustee made any effort to wind-up its assets.[20] Thus, it is the Plaintiff's position that the Raiff Trust never terminated, and therefore is a proper party here. The Plaintiff relies on Ehrlich's Affidavit, which confirms that he does "not recall [the Raiff Trust] making any distribution to the [Family Trust] or to [Gregory]" or "taking any actions to terminate the [Raiff Trust] on or following its second anniversary or to make any actual distribution of that trust's assets."[21] Further, "[t]o [his] knowledge, the [Raiff Trust] continued to exist and hold Jenzabar stock during the period of [his] service as Trustee," that is, until December 2012.[22] Gregory, the Raiff Trust's vested beneficiary, also testified that the Trust exists, and continues to hold shares of Jenzabar stock.[23]

The Plaintiff, further, emphasizes several transactions between the Raiff Trust and the Company that have transpired since 2002, including a stock buyback and books and records requests pursued on behalf of the Raiff Trust as record

---

[19] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 7.
[20] *Id.* at 8. Additionally, the Plaintiff avers that, "if the Trust had become a legal nullity," it would not have been able to participate in acts with legal significance, such as partaking in the 2005 Jenzabar stock buyback. *Id.* at 13-14; *see also id.* at 8 (arguing that "the Trust's 'intent' was to hold Jenzabar stock 'long term'") (quoting Jonathan Dep. 23:1-6).
[21] Ehrlich Aff. ¶ 4.
[22] *Id.*
[23] *See, e.g.*, Gregory Dep. 5:21-22, 16:17-17:6, 24:11-14, 26:20-27:1.

owner of Jenzabar stock.[24]   The Raiff Trust remained the record owner of approximately 16,391,000 shares on Jenzabar's stock ledger until at least December 2013.[25]

B. *Procedural History*

Because an address of Gregory's was listed in Jenzabar records as the appropriate address for which to correspond with the Raiff Trust,[26] the Notice of Stipulation and Petition for Dismissal of Derivative Claims was sent to the Trust via Gregory.[27]   On August 22, 2013, the Raiff Trust moved to intervene.   On September 26, 2013, this Motion was granted with conditions, including that the Defendants "be permitted to challenge, through motion practice, the capacity, standing, and adequacy to serve as a derivative plaintiff of the Raiff Trust."[28]   As noted above, counsel represent that the Raiff Trust holds approximately four percent of the stock of Jenzabar.  No other stockholders have sought to intervene.

On September 27, 2013, the Defendants filed a Motion to Dismiss pursuant to 8 *Del. C.* § 327 and Court of Chancery Rules 9(a) and 23.1.   The Defendants request that this Court dismiss this action because "(1) the Trust lacks capacity to

---

[24] *See, e.g.*, Transmittal Aff. of Thomas Uebler Exs. I, O; Transmittal Aff. of Gregory Stuhlman Exs. 14-17.

[25] Barr Dep. 45:22-46:4.

[26] *See, e.g.*, Transmittal Aff. of Thomas Uebler Ex. M; Transmittal Aff. of Gregory Stuhlman Ex. 13 at RAIFF-000366.

[27] *See* Oral Arg. Tr. 39:8-13; *id.* at 53:22-23 ("We don't deny that they sent the notice to an address where Greg Raiff was.").

[28] *In re Jenzabar Inc. Derivative Litig.*, C.A. No. 4521-VCG, at 2-3 (Del. Ch. Sept. 26, 2013) (ORDER).

sue, (2) the Trust lacks derivative standing because it has no beneficial or economic interest in Jenzabar, and (3) the Trust is an inadequate fiduciary of Jenzabar."[29] I heard oral argument on the Defendants' Motion on May 1, 2014. What follows is my analysis of the capacity issue raised by the Defendants. For the following reasons, I find that the Raiff Trust lacks the capacity to prosecute this action on behalf of Jenzabar.

C. *Analysis*

As a preliminary matter, the Plaintiff argues that the status of the Raiff Trust is outside my purview. The Plaintiff avers that "Massachusetts strictly limits those who may enforce the terms of a private trust to beneficiaries or persons acting on their behalf."[30] Citing to *Weaver v. Wood*, where the Supreme Judicial Court of Massachusetts—that state's highest court—opined that, "[i]n the case of a private trust, only a named beneficiary, or one suing on his or her behalf, can maintain *an action to enforce a trust*,"[31] the Plaintiff argues that the Defendants do not have standing to ask this Court to interpret the terms of the Trust Instrument, or to "force the Trust's termination against the wishes of its trustees and beneficiaries."[32] However, the action before me is not an action to *enforce* the terms of the Raiff Trust, or to force its termination. Instead, the action before me is a derivative

---

[29] Defs.' Op. Br. in Supp. of Mot. to Dismiss at 2.
[30] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 16.
[31] *Weaver v. Wood*, 680 N.E.2d 918, 922 (Mass. 1997) (emphasis added).
[32] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 17.

action purportedly brought by the Raiff Trust. In response to the Raiff Trust's intervention in this litigation, the Defendants here raise the issue of whether the Raiff Trust has capacity to sue in this Court, without which this matter may not proceed. Consequently, I am not prohibited from addressing the issues raised under the rule set out in *Weaver v. Wood*.

Having determined that I may resolve the matter before me, I first address whether the Defendants are equitably estopped from raising lack of capacity as a defense, and then, finding that they are not so estopped, turn to the substance of that assertion.

### 1. The Defendants are not Equitably Estopped from Raising Lack of Capacity as a Defense

The Plaintiff argues that the Defendants should be equitably estopped from asserting lack of capacity, based on the many transactions that have occurred involving Jenzabar and the Raiff Trust since its purported termination.[33] To establish equitable estoppel, the Raiff Trust must demonstrate that it "lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; relied on the conduct of the party against whom estoppel is claimed; and suffered a prejudicial change of position as a result of [its] reliance."[34] The Plaintiff argues that, because of its past interactions with the Company, it lacked

---

[33] *See, e.g.*, Transmittal Aff. of Gregory Stuhlman Exs. 15-17, 26.
[34] *Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, at *19 (Del. Ch. Mar. 31, 2014) (internal quotation marks omitted).

knowledge that the Defendants "would disavow the Trust's ownership" of Jenzabar stock, and relied on those interactions "in which Defendants repeatedly recognized the Trust as a Jenzabar stockholder."[35] It is not, however, the Company's subjective decision to raise the capacity issue that constitutes "the facts in question" for determining whether equitable estoppel applies; instead, it is the juridical status of the Raiff Trust itself. The facts relevant to that inquiry are, and have been, known to the Raiff Trust; the Plaintiff does not—and cannot—assert that it lacked knowledge about the terms of the Raiff Trust that the Defendants possessed. Thus, the Plaintiff's equitable estoppel claim must fail.[36]

>    2. The Raiff Trust Lacks the Capacity to Pursue this Derivative Action

I now turn to the capacity issue raised by the Defendants, who argue that the Raiff Trust—as a terminated trust—lacks the capacity to pursue this derivative action. Generally, "[c]apacity is the ability of a particular individual [or] entity to use, or to be brought into, the courts of a forum."[37] The issue, therefore, is whether the trustee, as fiduciary for a trust that terminated in 2002, has the power to maintain this action. Court of Chancery Rule 9(a) provides, in pertinent part:

> When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party shall

---

[35] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 25-26.
[36] In briefing the pending Motion, the Plaintiff did not raise any other affirmative defenses.
[37] *Johnson v. Helicopter & Airplane Servs. Corp.*, 404 F. Supp. 726, 729 (D. Md. 1975).

11

do so by specific negative averment, which negative averment shall include such supporting particulars as are peculiarly within the pleader's knowledge.[38]

Thus, on a motion to dismiss pursuant to Rule 9(a), this Court may consider supporting evidence of such capacity, or lack thereof.

The Plaintiff argues that the Raiff Trust has the capacity, through its trustee, to maintain this derivative action because "the Trust continues to exist and hold Jenzabar stock as a legal entity."[39] To support this contention, the Plaintiff highlights testimony of the principal parties involved in the Raiff Trust's establishment—namely Ehrlich, the initial trustee, and Gregory, the settlor and life beneficiary—that indicates that the Raiff Trust did not distribute its assets.[40] The Plaintiff also points out that the trustee is permitted by the terms of the Trust Instrument to retain investments "for such period of time as he shall deem advisable . . .," and to hold securities "until actual distribution of the trust property following termination of such trust."[41]

In determining whether the Raiff Trust lacks juridical capacity, however, I need not resolve here the question of whether the Raiff Trust distributed Jenzabar stock in 2002, or whether the Raiff Trust continues to hold this stock. Rather, I assume for purposes of this Letter Opinion that the stock has not been distributed.

---

[38] Ct. Ch. R. 9(a).
[39] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 11.
[40] *See, e.g.*, Gregory Dep. 5:21-22, 16:17-17:3, 24:11-14; Ehrlich Aff. ¶ 4; *see also* Oral Arg. Tr. 52:20-53:2, 57:3-12.
[41] The Raiff Trust Trust Instrument §§ 12(A), (F).

12

The powers of a trustee are established by the intent of the settlor as provided in the trust instrument, and constrained by applicable law. The Raiff Trust terminated, as specifically provided by the Trust Instrument, on its second anniversary in 2002. Consequently, the trustee may only maintain this action if he retains the authority to do so, post-termination. Under Massachusetts law, upon termination of the Raiff Trust in 2002, the powers of the trustee were confined to those necessary to preserve Trust assets pending distribution, as well as any other powers explicitly provided in the pertinent Trust Instrument. The Trust Instrument here, however, does not authorize the trustee to bring the type of litigation now pending.

In *T.W. Nickerson, Inc. v. Fleet National Bank*, the Massachusetts Supreme Judicial Court explained that, "[o]nce a trust is terminated, and absent a specific grant of authority in the trust, the trustee has the power and obligation only to preserve the trust property while winding up the trust and delivering any trust property to the beneficiary."[42] Thus, the trustee of the Raiff Trust at issue here has

---

[42] *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 924 N.E.2d 696, 706 (Mass. 2010); *see also* 203E Mass. Gen. Laws § 815(a) ("A trustee, without authorization by the court, may exercise: (1) powers conferred by the terms of the trust . . . ."); *id.* § 816 ("Without limiting the authority conferred by section 815, a trustee may: . . . (27) on termination of the trust, exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it."); *id.* § 105(b) (providing, with certain exceptions not applicable here, that "[t]he terms of a trust shall prevail over any provision" of the Massachusetts Uniform Trust Code). Although the Massachusetts Uniform Trust Code went into effect in 2012, it generally applies retroactively. *See* 140 Mass. Acts § 66(a) (2012) ("Except as otherwise provided in this

the authority to first, wind-up and distribute the corpus, taking those actions necessary to preserve the Jenzabar stock in light of that process, and second, to exercise those powers specifically authorized by the Trust Instrument.

The Plaintiff does not argue that this litigation is necessary to preserve Trust assets during the wind-up period; instead, it argues that the trustee is authorized by the Trust Instrument to maintain this derivative action on behalf of Jenzabar. The Plaintiff argues that the Trust Instrument specifically authorizes the pursuit of derivative litigation, post-termination, in the following language:

> Trustee's Powers. Subject to the restrictions set forth in the preceding sections, the Trustee shall have full power to take any steps and do any acts which he may deem necessary or proper in connection with the due care, management and disposition of the property and income of the Trust and, in particular, without limiting the powers given by law or other provision of this trust, may, in his discretion, and *until actual distribution of the trust property following termination of such trust, without order or license of court*:
> . . .
>    L. Settle, compromise or refer to arbitration any matter in any way affecting the trust and pay, compromise or contest any claim or dispute directly or indirectly affecting the property thereof; . . . .[43]

The Plaintiff argues that the trustee is, pursuant to this language, entitled to pursue this derivative action, which ostensibly would affect its purported holding of

---

act: (1) this act shall apply to all trusts created before, on or after the effective date of this act . . . .").

[43] The Raiff Trust Trust Instrument § 12 (emphasis added).

Jenzabar stock, and which the Plaintiff characterizes as a decision by the trustee to "contest [a] claim . . . affecting [the Trust's] property."[44]

During briefing, the Plaintiff uses the word "contest" interchangeably with the word "litigate;" in other words, the Plaintiff takes the position that "contest" is a neutral term that can include offensive as well as defensive legal actions. Conversely, the term "contest any claim" could be viewed as limited to resisting a claim, that is, limited to defensive litigation only. I find that any ambiguity in the word "contest" in isolation is resolved by examining its use in context.[45] In Section 12(L), the term "contest" is used in a list of words all denoting defensive actions or the termination of litigation, namely "settle," "compromise," "refer to arbitration," or "contest." It is clear in light of this list, and in light of the trustee's limited duty to preserve the Trust's assets while winding-up the Raiff Trust, that the trustee's authority to "contest any claim" does not permit the trustee to *initiate* litigation, including derivative actions on behalf of Jenzabar. Instead, this language authorizes the trustee to engage in defensive actions, following termination but before distribution. Nothing in clause (L) gives the trustee the power to "bring," "initiate," "pursue," or "prosecute" litigation, post-termination.

---

[44] Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss at 15; *see also* Oral Arg. Tr. 53:11-15.

[45] In my analysis, I employ the canon of *ejusdem generis*, which provides that "where general language follows an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004) (internal quotation marks omitted).

Under the language of the Trust Instrument and Massachusetts law, therefore, the trustee of this terminated Trust lacks the authority to bring such a suit. As the trustee lacks the capacity to bring this derivative action on behalf of Jenzabar, the intervention by the Raiff Trust is a nullity.

As Massachusetts trust law generally, and the Trust Instrument specifically, dictate that the trustee is not able to maintain this litigation, I find—regardless of whether the Raiff Trust retains Jenzabar stock—that the Raiff Trust lacks capacity to pursue this derivative action. Accordingly, I need not reach the second and third issues raised by the Defendants in their Motion to Dismiss. I do note, however, that even if the Trust Instrument authorized the trustee to maintain this action, it is doubtful that pursuing this litigation is consistent with the trustee's primary duty under Massachusetts law, post-termination, of winding-up the Raiff Trust's assets; nor does it appear, in light of the trustee's primary duty to wind-up the Raiff Trust, that the Trust, acting through the trustee, would be a suitable stockholder representative in pursuing a claim for damages on behalf of Jenzabar, which, in light of the claims at issue, would be of only nominal value to the Trust itself.

D. *Conclusion*

For the reasons explained above, the Defendants' Motion to Dismiss is granted. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III